**EDLOW INTERNATIONAL CO., Plaintiff,**

v.

**NUKLEARNA ELEKTRARNA KRSKO, Defendant.**

Civ. No. 77–1117.

United States District Court, District of Columbia, Civil Division.

Dec. 7, 1977.

---

Cherif Sedky, Washington, D.C., for plaintiff.

William Bradford Reynolds, Shaw, Pittman, Potts & Trowbridge, Washington, D.C., for defendant.

## MEMORANDUM ORDER

JOHN H. PRATT, District Judge.

This action to recover broker's fees allegedly due in connection with a sale of uranium fuel to defendant is before the Court on defendant's motion to dismiss on jurisdictional grounds. For the reasons stated herein, the motion to dismiss is granted.

### 1. *Factual Background*[1]

Plaintiff Edlow International is a District of Columbia corporation, the activities of which include acting as broker in connection with sales of nuclear fuels. The corporation is owned and managed largely by the Edlow family, members of which also hold all but a fraction of the stock of a Bermuda enterprise known as Edlow Resources Ltd. Defendant Nuklearna Elektrarna Krsko ("NEK") is a "workers' organization" founded under the constitution and laws of the Socialist Federal Republic of Yugoslavia ("SFRY") for the purpose of constructing and operating a nuclear power generating facility at Krsko, Yugoslavia.

In December, 1975, Jack Edlow, vice-president of the plaintiff and a shareholder of Edlow Resources, received a Telex message to call Ms. France Millet, Paris representative of a French nuclear concern called Framatome.[2] Upon his doing so, he learned that a Yugoslav utility desired to purchase about 200,000 pounds of uranium oxide for use as nuclear fuel. Mr. Edlow embarked on a canvass of uranium sources over the next several weeks, and finally ascertained that United Nuclear Corporation, a United States producer, could meet the utility's needs. On January 21, 1976, he Telexed Ms. Millet to that effect, advising her also that the transaction was subject to a brokerage fee of 15 cents per pound. Two days later, Ms. Millet conveyed this information either to NEK or to the Metalka agency of Ljubljana, Yugoslavia, a "workers' organization" serving as NEK's import-export agent. On January 28, apparently in response to a query from Metalka, Ms. Millet Telexed Metalka a message identifying United Nuclear and Edlow International as the seller and broker respectively.

After communications between Mr. Edlow and a representative of Metalka, a meeting was arranged for February 16, in Paris. Plaintiff asserts NEK expressly affirmed its obligation to pay Edlow a broker's fee of 15 cents per pound. In February and March 1976, NEK allegedly communicated with United Nuclear and with NEK's American legal counsel (retained in connection with the ongoing negotiations) via Edlow International's Telex outlet. In early March 1976 United Nuclear and NEK entered into a contract for 160,000 pounds of uranium oxide to be delivered over a four-year period. On March 9, 1976, the Bermuda-based Edlow Resources firm submitted an invoice for $24,000.[3]

Over the next six months, Jack Edlow sent several Telexed messages to Janez Dular, NEK general manager, reminding NEK of the as yet unpaid invoice. In each case, the message identified Mr. Edlow as a representative of Edlow Resources. By letter dated August 4, 1976, Mr. Edlow explained the submission of the invoice to NEK by describing the sequence of events culminating in the NEK–United Nuclear contract. The letter is on stationery of Edlow International and Mr. Edlow identifies himself as vice-president of Edlow International, but the letter specifies that the invoice was "submitted by our affiliate, Edlow Resources Ltd. of Hamilton, Bermuda . . ." Finally, on October 1, 1976, NEK notified Jack Edlow by letter of that date addressed to Edlow International, that NEK would not pay on the invoice because the contract in question "was concluded without the participation of your company." On November 9, 1976, Mr. Edlow, again identifying himself in connection with Edlow Resources, rejected NEK's interpretation of the cir-

---

1. For purposes of this motion only, we adopt plaintiff's version of how the contract which has engendered this action was consummated.

2. The pleadings disclose several variant spellings of the Framatome name. Our version is that employed by Ms. Millet in her Telex communications.

3. Defendant's Exhibit B includes two invoices, both dated March 9, 1976, and both for $24,-000. One appears on stationery with an Edlow International letterhead, below which are typed the words, "On behalf of Edlow Resources Limited . . ."; the other refers to Edlow Resources only. Both direct that payment be forwarded to an Edlow Resources account at Hamilton, Bermuda. The existence of two such invoices is not explained; however, we consider the differences between the two insignificant in this context.

cumstances and requested a meeting with Ms. Millet of Framatome, M. Zumer of Metalka, and NEK representatives. Efforts to resolve the impasse proved unavailing, and Edlow International brought this action to recover on the alleged agreement to pay brokers' fees, or in the alternative, to recover in *quantum meruit* for services rendered. Instead of answering the complaint, NEK has moved to dismiss for lack of jurisdiction. If we have subject matter jurisdiction, it must be by reason of diversity, 28 U.S.C. § 1332 (1970), *as amended by* Foreign Sovereign Immunities Act of 1976, Pub.L. No. 94–583, § 3, 90 Stat. 2891, or under the jurisdictional provision governing actions against foreign states, 28 U.S.C.A. § 1330 (Supp.1977), *added by* Foreign Sovereign Immunities Act, *supra*, § 2(a), 90 Stat. 2891.

### 2. Diversity Jurisdiction

If diversity jurisdiction exists here, it must be under Section 1332(a)(2), which applies to actions between "citizens of a State and citizens or subjects of a foreign state." Deferring for the moment consideration whether NEK is a citizen or subject of a foreign state, we must weigh defendant's assertion that the proper plaintiff in this action is Edlow Resources, an enterprise organized under the laws of Bermuda and apparently limited in its activities to Bermuda. Defendant's assertion is that, because Edlow Resources is not a citizen of any State of America, the Court lacks diversity jurisdiction. Plaintiff has not alleged that Edlow Resources has assigned whatever claim it might have here to Edlow International, so we need not determine whether such an assignment would have sufficed to confer jurisdiction. The question is simply which of the two enterprises, Edlow International or Edlow Resources, is entitled to prosecute this action.

Defendant's argument rests on the repeated statements in Jack Edlow's communications to the others involved in the contract that the invoice in question was submitted by, or on behalf of, Edlow Resources. Defendant has included in its Exhibit B a letter dated January 25, 1977, from counsel for Edlow Resources to counsel for NEK. The letter commences with the statement that "I am writing on behalf of Edlow Resources Limited ("Edlow") with respect to a fee owed to Edlow by" NEK. Plaintiff's explanation for these references is that Edlow Resources "was used as the billing agent for the NEK transaction" on the assumption that such an arrangement would result in tax benefits not available if Edlow International were billed. Once it had been determined that the status of United Nuclear as a United States corporation would eliminate the anticipated benefits, Edlow International asserted itself to be the proper plaintiff here. Plaintiff suggests that NEK should have known it was dealing with Edlow International after Ms. Millet identified the broker involved in the prospective transaction as Edlow International. Whatever effect Ms. Millet's allusion might otherwise have had is vitiated by Jack Edlow's numerous subsequent references to Edlow Resources as the party with which NEK was to deal.

Under 28 U.S.C. § 1359 (1970), "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." The section applies equally to suits involving alien parties and those between citizens of different states. *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 829–30, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969). When a motion to dismiss is premised, as NEK's is in part, on section 1359, the burden is on the party invoking the Court's jurisdiction to prove its existence. *Fowler v. Coals*, 418 F.Supp. 909, 911 (E.D.Tenn.1976). Plaintiff has not met its burden. The fact that the Edlow family dominates Edlow International and Edlow Resources may have afforded them the opportunity to credit the NEK work and fee to either corporation. Jack Edlow's status as a principal in each corporation would support an argument that his services in finding a seller were performed for either Edlow corporation. Once Edlow Resources was identified as the source of the invoice,

and hence the party entitled to press whatever rights there may have been to payment on the invoice, however, the common ownership could not be used to shift credit for the services back to Edlow International when the expected tax benefits evaporated. That this action is grounded in part on principles of *quantum meruit* does not rectify the jurisdictional defect here: the question in *quantum meruit* is which corporation performed the services. Jack Edlow's position within each corporation would require the determination to be made on the basis of the representations made in the course of events. These representations were that Jack Edlow was representing Edlow Resources.

■ Inasmuch as Edlow Resources and NEK are alien enterprises and diversity jurisdiction does not exist in suits between aliens, *IIT v. Vencap, Ltd.*, 519 F.2d 1001, 1015 (2d Cir. 1975), we lack diversity jurisdiction.

### 3. *Action Against A Foreign State*

Under the Foreign Sovereign Immunities Act, the district courts have jurisdiction over any nonjury civil claim against a foreign state, provided no immunity under statute or international agreement attaches to the claim. 28 U.S.C.A. § 1330(a) (Supp. 1977). So far as subject matter jurisdiction is concerned, the issue here is whether NEK is a "foreign state" as that term is statutorily defined. 28 U.S.C.A. § 1603 (Supp. 1977), *added by* Foreign Sovereign Immunities Act, *supra*, § 4(a), 90 Stat. 2892. The definition specifies that the term "foreign state" is to include not only orthodox governmental bodies but also "an agency or instrumentality of a foreign state." *Id.* § 1603(a). To qualify as "an agency or instrumentality of a foreign state," an entity must meet three criteria: first, it must be "a separate legal person, corporate or otherwise;" second, it must be "an organ of a foreign state or political subdivision thereof," or alternatively be owned by a foreign state or political subdivision thereof as majority shareholder, and third, it cannot be a citizen of the United States or be

organized under the laws of any nation save the foreign state in question. *Id.* § 1603(b)(1)–(3). That NEK meets the first and third criteria is undisputed. The point of controversy is whether it is either an "organ" of the Yugoslav state or owned by the state or a subdivision thereof.

■ As noted above, NEK is a "work organization" within the meaning of Article 35 of the SFRY constitution, which defines such an organization as "an independent self-managing organization of workers linked in labour by common interests and organized in basic organizations of associated labour . . ." Its twelve founding organizations also are "work organizations", at least some of which are producers and distributors of electric power. A "founders organ of management" supervises operation of NEK, and day-to-day operations are conducted by NEK management employees. Affidavit of Janez Dular at 2. Plaintiff's argument that NEK is an agency or instrumentality of SFRY rests, at bottom, on the principle that all property under a socialist system such as Yugoslavia's is subject to the ultimate ownership and authority of the state. Plaintiff's Opposition at 9. On the basis of this premise plaintiff argues that "NEK and other Yugoslav work organizations are ultimately owned by the state." *Id.* Defendant's counterargument rests in part on the status of "social property" in Yugoslavia as neither state-owned nor privately owned, but rather "held and used 'in trust' by the work organization for the general social good of all the Yugoslav people." Motion to Dismiss at 7. Although these aspects of property ownership under the SFRY system bear on the matter under consideration, they cannot support a finding in plaintiff's favor: to accept plaintiff's argument on this point would be to characterize virtually every enterprise operated under a socialist system as an instrumentality of the state within the terms of the Foreign Sovereign Immunities Act of 1976. The Act's legislative history evinces Congress' intent that the definition of "agency or instrumentality of a foreign state" be read broadly to encompass "a variety of forms,

including a state trading corporation, a mining enterprise, a transport organization such as a shipping line or airline, a steel company, a central bank, an export association, a governmental procurement agency or a department or ministry which acts and is suable in its own name." H.Rep. No. 94–1487, 94th Cong., 2d Sess. 15–16 (1976). However, there is no suggestion that a foreign state's system of property ownership, without more, should be determinative on the question whether an entity operating within the state is a state agency or instrumentality under the Act.

Two more precise indices of an entity's status as state agency or instrumentality focus on the degree to which the entity discharges a governmental function, and the extent of state control over the entity's operations. Defendant suggests that the generation and distribution of electricity in Yugoslavia are committed to independent work organizations such as NEK. The work organization in Yugoslavia appears to serve as the principal vehicle for enterprise and production in that nation, much as the private corporation fulfills comparable functions in the United States. That NEK and its co-founders all are work organizations that generate and distribute power is a persuasive suggestion that power generation and distribution is a nongovernmental function in Yugoslavia. Plaintiff's argument that NEK is subject to state control rests on the extent of government regulation of work organizations in such areas as control of assets, dissolution and liquidation. Opposition at 7–8. Defendant, on the other hand, observes that the Yugoslav government does not subsidize NEK, holds no seats on the NEK board, and otherwise takes no direct hand in daily management of NEK operations. These factors are crucial to application of the so-called "control test." In deciding the analogous question whether a community action agency funded federally under the Economic Opportunity Act of 1964, 42 U.S.C. §§ 2781 et seq., is an agency or instrumentality of the Federal Government for purposes of the Federal Tort Claims Act, 28 U.S.C. § 1346 (1970), as amended, Pub.L. No. 94–455, tit. XII,

§ 1204(c)(1), tit. XIII, § 1306(b)(7), 90 Stat. 1697, 1719 (1976), the Supreme Court noted that a critical factor is the "power of the Federal Government 'to control the detailed physical performance of the contractor.'" United States v. Orleans, 425 U.S. 807, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976), quoting Logue v. United States, 412 U.S. 521, 528, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973). The Court pointed out also that the degree to which an entity is subject to government regulation aimed at assuring compliance with government goals is not determinative on the question whether the entity is an agency or instrumentality of the state. Id. 425 U.S. at 815, 816, 96 S.Ct. 1971. Without depreciating the extent to which the Yugoslav state exercises ultimate control over the policies and operations of work organizations like NEK, we are persuaded by defendant's showing that NEK's daily operations are virtually free of direct government control.

The only basis, therefore, for concluding that NEK is an "organ" of the Yugoslav government, or is at least 50 per cent owned by the government, is that the state "owns" all forms of property in Yugoslavia. Having determined that this premise, however valid it may be in political theory, is not present to confer jurisdiction under the Foreign Sovereign Immunities Act, we lack subject matter jurisdiction under that Act.

Having decided that we lack subject matter jurisdiction for the reasons above stated, it is not necessary to reach the question whether in personam jurisdiction was ever acquired. Similarly, the absence of subject matter jurisdiction obviates consideration of plaintiff's motion for leave to amend its complaint to include the Metalka agency as a defendant.

Accordingly, it appearing that this Court lacks subject matter jurisdiction over this action under 28 U.S.C. §§ 1330, 1332, it is by the Court this 6th day of December, 1977,

ORDERED, that defendant's motion to dismiss be, and hereby is, granted, and it is further

ORDERED, that plaintiff's motion for leave to amend its complaint be, and hereby is, denied as moot.