Franklin Rodriguez **DELGADO**,
et al., Plaintiffs,

v.

**SHELL OIL CO., et al., Defendants.**

**Civ. A. No. H–94–1337.**

United States District Court,
S.D. Texas,
Houston Division.

June 30, 1995.

Fred Misko, Charles Siegel, Misko, Howie & Sweeney, Dallas, TX, Stephen D. Susman, James McCartt, Michael A. Lee, Susman Godfrey, Houston, TX, Harold W. Nix, Edward L. Hohn, Harold Nix & Associates, Daingerfield, TX, Wayne Fisher, Jim Huguenard, Fisher, Gallagher & Lewis, Houston, TX, John McEldowney, Greer, Herz & Adams, Galveston, TX, James W. Bradford, Jr., Angleton, TX, Joseph C. Kohn, Myles H. Malman, Martin J. D'Urso, Kohn, Nast & Graf, P.C., Philadelphia, PA, Thomas H. Hart, III, Alkon, Rhea & Hart, St. Croix, VI, Ramon Garcia, Dalinda G. Quintana, Law Office of Ramon Garcia, P.C., Edinburg, TX, Enrique Alvino Garza, Hebronville, TX, J.A. "Tony" Canales, Canales & Simonson, Corpus Christi, TX, Vaughn O. Stewart, Lake Jackson, TX, for plaintiffs.

John L. Hill, Jr., J. Michael Dorman, Richard Staff, James E. Essig, Liddell, Sapp, Zivley, Hill & Laboon, Burt Ballanfant, Shell Oil Co., Houston, TX, Morris Atlas, Lisa Powell, Atlas & Hall, L.L.P., McAllen, TX, Richard R. Gonzales, Hebronville, TX, Robert W. Weber, Atchley, Russell, Waldrop & Hlavinka, L.L.P., Texarkana, TX, John R. Gilbert, Gilbert, Gilbert & Boyd, P.C., Angleton, TX, for Shell Oil Co.

D. Ferguson McNeil, Vinson & Elkins, Charles W. Schwartz, Houston, TX, Stephen C. Lewis, Charles M. O'Connor, Mariah Baird, Landels, Ripley & Diamond, San Francisco, CA, Michael M. Phillips, Angleton, TX, T. John Ward, Calvin Capshaw, Brown, McCarrol & Oaks Hartline, Longview, TX, for Occidental Chemical Corp.

Terence M. Murphy, James S. Teater, Michael L. Rice, Jones, Day, Reavis & Pogue, Dallas, TX, Wiley Thomas, Angleton, TX, for Standard Fruit Co., Dole Fresh Fruit Co.

F. Walter Conrad, Michael Brem, Baker & Botts, L.L.P., Houston, TX, Patrick Reilly, Galveston, TX, J.G. Adami, Jr., Perkins, Oden, Warbuxton, McNeill, Adami & Paisley, Alice, TX, John R. Gilbert, Gilbert, Gilbert & Boyd, P.C., Angleton, TX, Eduardo R. Rodriguez, Rodriguez, Colvin & Chaney, Brownsville, TX, Robert Rolston, Bird Old III, Old, Rolston & Old, Mount Pleasant, TX, T. John Ward, Calvin Capshaw, Brown, McCarrol & Oaks Hartline, Longview, TX, for Dow Chemical Co.

Samuel E. Stubbs, William D. Wood, Fulbright & Jaworski L.L.P., Houston, TX, for Chiquita Brands and Chiquita Brands Intern., Inc.

James J. Juneau, Pamela K. Estes, Strasburger & Price, L.L.P., Houston, TX, Robert T. Greig, Howard S. Zelbo, Cleary, Gottlieb, Steen & Hamilton, New York City, for Del

Monte Fresh Produce, N.A. and Del Monte Tropical Fruit Co.

Edward F. Fernandes, Solar & Fernandes, L.L.P., Houston, TX, for Programa Nacional de Banano.

Scott M. Hendler, The Hendler Law Firm, Austin, TX, Don Weitinger, Carrie Weitinger, Weitinger & Weitinger, Houston, TX, Michael Brickman, Ness, Motley, Loadholt, Richardson & Poole, P.A., Charleston, SC, for intervenors.

Jeffrey H. Marsh, Mattingly & Marsh, Houston, TX, Robert Crow, Boornazian, Jensen & Garthe, Oakland, CA, for Amvac Chemical Corp.

Laurence E. Best, Best, Koeppel & Klotz, Houston, TX, Laurence E. Best, Best, Koeppel & Klotz, New Orleans, LA, for interveners (Hondurans).

Thomas J. Brandt, Bradley W. Cole, Robert A. Shults, Sheinfeld, Maley & Kay, P.C., Houston, TX, Peter R. Paden, Teitelbaum, Hillde, Rodman, Paden & Hibsher, P.C., New York City, for third- and fourth-party defendants, Dead Sea Bromine Co., Ltd., Bromine Compounds, Ltd., and Ameribrom, Inc.

### MEMORANDUM AND ORDER

LAKE, District Judge.

Pending before the court is the Motion to Remand or, in the Alternative, Motion to Sever and Remand of plaintiffs (Docket Entry No. 16). Plaintiffs argue that the court must remand this action pursuant to 28 U.S.C. § 1447(c) because the court lacks subject matter jurisdiction. Alternatively, plaintiffs ask the court to sever claims concerning the recently impleaded party that may have conferred subject matter jurisdiction and to remand the remaining claims. Also pending is the Motion to Consolidate of defendant, Shell Oil Co. (Docket Entry No. 19).

### I. Background

On January 13, 1993, plaintiffs, residents of Costa Rica, Panama, and Nicaragua, filed a petition in the 212th District Court of Galveston County, Texas. They sought damages from a variety of defendants for injuries stemming from alleged exposure to a nematocide, dibromochloropropane (DBCP), while working on banana plantations in those countries. Although plaintiffs pursued remedies available exclusively under state law, defendants removed the action to the Galveston division of this district on the basis that the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA) preempted those claims. Judge Kent found that FIFRA did not preempt plaintiffs' claims and remanded the action on April 19, 1993. *Rodriguez v. Shell Oil Co.*, 818 F.Supp. 1013 (S.D.Tex.1993). All further proceedings, including consolidation of the action with another DBCP case,[1] were conducted by the state court until March 15, 1994, when one of the defendants, Del Monte Fresh Produce, N.A., filed a third-party petition against Dead Sea Bromine Co. Ltd. (Dead Sea), an Israeli company. Dead Sea removed the action to the Galveston division pursuant to 28 U.S.C. § 1441(d) because Dead Sea is a "foreign state" within the meaning of the FSIA.[2] The case was assigned to Judge Kent as Civil Action No. G–94–193. Upon Judge Kent's recusal (Docket Entry No. 8) the case was transferred to the Houston division and randomly assigned to the undersigned judge (Docket Entry No. 14).

### II. Standard of Review

"Section 1447(c) provides two grounds for remand: (1) a defect in removal procedure and (2) lack of subject matter jurisdiction." *Burks v. Amerada Hess Corp.*, 8 F.3d 301, 303 (5th Cir.1993). When considering a motion to remand the removing party bears the burden of showing that removal was proper. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir.1988), *appeal after remand*, 915 F.2d 965 (5th Cir.1990), *aff'd*, 503

---

1. The January 7, 1994, Order consolidating this action with *Aguilar v. Shell Oil Co.*, No. 93–CV–0658 (56th Dist.Ct., Galveston County, Texas), is attached as Exhibit 19 to Dead Sea Bromine's First Supplement to the Record Following Removal (Docket Entry No. 11).

2. The Foreign Sovereign Immunities Act was originally enacted as Pub.L. No. 94–583, 90 Stat. 2892 (1976). It is now codified as amended at 28 U.S.C. §§ 1602–1611.

**1318**

U.S. 131, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992). "This extends not only to demonstrating a jurisdictional basis for removal, but also necessary compliance with the requirements of the removal statute." *Albonetti v. GAF Corporation–Chemical Group*, 520 F.Supp. 825, 827 (S.D.Tex.1981). Because removal jurisdiction "raises significant federalism concerns," *Willy*, 855 F.2d at 1164, courts must construe removal statutes "narrowly, with doubts resolved in favor of remand to the state court." *Jefferson Parish Hosp. Dist. No. 2 v. Harvey*, 788 F.Supp. 282, 283–84 (E.D.La.1992). If there is any doubt that a right to removal exists, "ambiguities are to be construed against removal." *Samuel v. Langham*, 780 F.Supp. 424, 427 (N.D.Tex.1992).

### III. *Discussion*

**A. Was removal properly achieved?**

■ Plaintiffs argue that the case was improperly removed because Dead Sea is not a foreign state. 28 U.S.C. § 1441(d) provides foreign states an absolute right to remove cases in which they are a party.[3] The FSIA contains a detailed definition of a foreign state.

(a) A "foreign state", except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).

(b) An "agency or instrumentality of a foreign state" means any entity—

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States … nor created under the laws of any third country.

28 U.S.C. § 1603. Dead Sea has introduced uncontradicted evidence that it satisfies the first and last elements of § 1603(b). The evidence demonstrates that Dead Sea is a corporation organized under the laws of Israel[4] and plaintiffs do not contend that Dead Sea is a citizen of a State of the United States or created under the laws of a third country. Instead, plaintiffs argue that despite the disjunctive criteria of § 1603(b)(2), Dead Sea's proof that Israel indirectly owns a majority of its shares[5] is insufficient to satisfy § 1603(b)(2). Citing *Edlow Int'l v. Nuklearna Elektrarna Krsko (NEK)*, 441 F.Supp. 827 (D.D.C.1977), plaintiffs argue that the court should also require Dead Sea to prove that it discharges a governmental function or that the State of Israel exercises direct control over its operations.

Plaintiffs' argument is unconvincing. In *Edlow* a Bermudan nuclear fuels broker sued NEK, "an independent self-managing organization of workers linked in labour by common interests and organized in basic organizations of associated labour" chartered by the Socialist Federal Republic of Yugoslavia to build and operate a nuclear power plant, to resolve a dispute over NEK's obligation to pay the broker its fee. 441 F.Supp. at 831. NEK argued that the court lacked subject matter jurisdiction over the action because it was not a foreign state within the meaning of § 1603(b). The broker countered that NEK met the § 1603(b)(2) test because Yugoslavia "owned" NEK by virtue of the country's socialist political ideology that all property

---

**3.** *See, e.g., Talbot v. Saipem A.G.*, 835 F.Supp. 352, 353 (S.D.Tex.1993). In *Nolan v. Boeing Co.*, 919 F.2d 1058 (5th Cir.1990), *cert. denied*, 499 U.S. 962, 111 S.Ct. 1587, 113 L.Ed.2d 651 (1991), the Fifth Circuit held that § 1441(d) affords third-party defendants the right to remove not only the third-party claims, but the entire case.

**4.** Affidavit of Bat–Sheva Golan, attached as part of Exhibit 1–A to Memorandum of Law of Third-Party Defendant Dead Sea Bromine Co., Ltd. in Opposition to Plaintiffs' Motion to Remand (Dead Sea's Opposition; Docket Entry No. 31).

**5.** Dead Sea has introduced uncontradicted evidence that Israel owns, albeit indirectly, roughly two-thirds of the outstanding shares of Dead Sea. *Id.* The fact that Israel's ownership interest in Dead Sea is "indirect" because Dead Sea is a wholly-owned subsidiary of an entity in which Israel owns an indirect majority interest is immaterial. *See, e.g., Talbot v. Saipem A.G.*, 835 F.Supp. 352, 353 n. 2 (S.D.Tex.1993).

was "owned" by the state. In rejecting that argument the court stated that

> to accept plaintiff's argument on this point would be to characterize virtually every enterprise operated under a socialist system as an instrumentality of the state.... [While the FSIA's] legislative history evinces Congress' intent that the definition of "agency or instrumentality of a foreign state" be read broadly to encompass "a variety of forms, ..." there is no suggestion that a foreign state's system of property ownership, without more, should be determinative on the question whether an entity operating within the state is a state agency or instrumentality under the [FSIA].

*Id.* at 831–32 (citation omitted). Faced with both a political system that forbade most private enterprise and a dearth of evidence with which to distinguish state-owned from privately held enterprises, the court was forced to improvise. It developed the test that plaintiffs now ask this court to apply; a test designed to determine whether NEK met the first § 1603(b)(2) criteria because it was an " 'organ' of the Yugoslav government" that discharged a governmental function, or whether it met the second criteria because the Yugoslav government actually exercised control over its operations in a manner indicating that it "owned" a controlling interest in the organization. *Id.* at 832. Since the court concluded that NEK met neither of § 1603(b)(2)'s criteria, it held that NEK was not a foreign state within the meaning of § 1603(a).

Nothing in § 1603(b) or any other provision of the FSIA suggests that a corporation able to satisfy the majority ownership requirement of § 1603(b)(2) must also meet the separate test performed by the *Edlow* court. Because the FSIA "sets forth the sole and exclusive standards to be used in resolving questions of sovereign immunity raised by foreign states before Federal and State courts in the United States," [6] this court joins those courts that have declined to judicially engraft the *Edlow* test onto the § 1603(b)(2) "ownership" inquiry.[7] Dead Sea is an agency or instrumentality of Israel because Israel owns a majority of its shares. Accordingly, Dead Sea had a right to remove the action under § 1441(d).

### B. Is remand necessary even though removal was proper?

Plaintiffs argue in the alternative that even if Dead Sea's removal was proper, its immunity under the FSIA deprives the court of subject matter jurisdiction over Dead Sea. Plaintiffs urge the court to dismiss Dead Sea for lack of subject matter jurisdiction and to remand the remaining claims to state court. Defendants contest plaintiffs' arguments and argue in the alternative that even if Dead Sea is immune, other bases for subject matter jurisdiction exist.

#### 1. Does 28 U.S.C. § 1330(a) provide a basis for jurisdiction?

The FSIA provides "the sole basis for obtaining jurisdiction over a foreign state in [American] courts." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434, 109 S.Ct. 683, 688, 102 L.Ed.2d 818 (1989). Because Congress predicated the exercise of "subject-matter jurisdiction in any ... action [against a foreign sovereign] ... on the existence of one of the specified exceptions to foreign sovereign immunity, 28 U.S.C. § 1330(a) [, a]t the threshold of every action in a district court against a foreign state ... the court must satisfy itself that one of the exceptions applies...." *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 493–94, 103 S.Ct. 1962, 1971, 76 L.Ed.2d 81 (1983). "[I]f none of the exceptions to sovereign immunity set forth in the FSIA applies, the district court lacks statutory subject matter jurisdiction.... Thus, where a case is removed based on the FSIA and section 1330, federal jurisdiction over both foreign *and nonforeign parties* does not attach until it is determined that the foreign sovereign lacks immunity pursuant to the

---

**6.** H.R.Rep. No. 94–1487, 94th Cong., 2d Sess. 12, *reprinted in* 1976 U.S.C.C.A.N. 6604, 6610; *see also Rodriguez v. Transnave Inc.*, 8 F.3d 284, 287 (5th Cir.1993).

**7.** *See, e.g., Intercontinental Dictionary Series v. De Gruyter*, 822 F.Supp. 662, 673 (C.D.Cal.1993); *Yessenin–Volpin v. Novosti Press Agency*, 443 F.Supp. 849, 852–54 (S.D.N.Y.1978).

FSIA." *Jones v. Petty–Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1065 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 193, 121 L.Ed.2d 136 (1992).

Plaintiffs have expended considerable effort to show that the court lacks subject matter jurisdiction over Dead Sea because it is immune. Defendants, in an effort to retain the forum of their choice, have submitted an even greater volume of papers to show that Dead Sea is not immune. Dead Sea has asserted, but has submitted no papers to show, that the court lacks subject matter jurisdiction over it. Although it is true that "even if the foreign state does not enter an appearance to assert an immunity defense, a district court must still determine that immunity is unavailable under the Act," *Verlinden,* 461 U.S. at 494 n. 20, 103 S.Ct. at 1971 n. 20, the court is unwilling to determine Dead Sea's immunity status without affording Dead Sea an opportunity to speak on its own behalf. Accordingly, Dead Sea will be ordered to provide the court with whatever arguments, authorities, and evidence supporting its claim to immunity it desires to present within 20 days from the entry of this Memorandum and Order. Any party opposing Dead Sea's claim of immunity must file any papers in opposition within 40 days from the entry of this Memorandum and Order. Dead Sea will have 10 days to reply to any oppositions.

### 2. *Is there an alternative basis for jurisdiction?*

Citing a line of Fifth Circuit cases beginning with *In re Wilson Industries, Inc.,* 886 F.2d 93 (5th Cir.1989), defendants argue that the existence of independent bases for subject matter jurisdiction make remand improper even were the court to determine that Dead Sea's immunity precludes the exercise of subject matter jurisdiction under § 1330. Alternatively, citing *Williams v. M/V SONORA,* 985 F.2d 808 (5th Cir.1993), defendants urge that remand is committed to the discretion of the court and would be inappropriate in this case.

### a. Does diversity jurisdiction exist?

The parties dispute the existence of complete diversity between the plaintiffs and defendants. 28 U.S.C. § 1332(a)(2) provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum of $50,000 ... and is between ... citizens of a State and citizens or subjects of a foreign state." Defendants argue that this test is satisfied because all defendants are citizens of various states of the United States and all plaintiffs are citizens of foreign countries. Plaintiffs argue that § 1332(a)(2) is not satisfied because one of the defendants, the Standard Fruit Co., is, for diversity purposes, a citizen of a foreign country and the presence of foreigners on both sides of the case destroys diversity. *See, e.g., Kuehne & Nagel (AG & Co.) v. Geosource, Inc.,* 874 F.2d 283, 290–91 (5th Cir.1989) (complete diversity does not exist in action between a foreign plaintiff corporation and a foreign defendant corporation).

28 U.S.C. § 1332(c)(1) provides that "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business...." Plaintiffs acknowledge that Standard Fruit Co. is a citizen of Delaware, the place of its incorporation, but argue that it is also a citizen of Ecuador because that is where it maintains its principal place of business. Defendants, relying on *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553 (11th Cir.1989), counter that nothing in § 1332(c)(1) precludes the exercise of diversity jurisdiction even if Standard Fruit Co.'s principal place of business is in Ecuador.

Because § 1332(c)(1) does not expressly apply to foreign corporations courts are divided as to its effect on foreign corporations. Some courts have concluded that § 1332(c)(1) applies only to domestic corporations. *See, e.g., Eisenberg v. Commercial Union Assur. Co.,* 189 F.Supp. 500, 502 (S.D.N.Y.1960) ("Unless a corporation is incorporated by a State of the United States it will not be deemed a citizen of the State where it has its principal place of business."). The Fifth Circuit first examined the effect of § 1332(c)(1) on foreign corporations in *Jerguson v. Blue Dot Investment, Inc.,* 659 F.2d 31 (5th Cir. 1981), *cert. denied,* 456 U.S. 946, 102 S.Ct.

2013, 72 L.Ed.2d 469 (1982). In *Jerguson* the defendant was a Panamanian corporation that maintained its principal place of business in Florida, the plaintiff's home state. The court held that diversity jurisdiction did not exist. After analyzing the conflicting judicial interpretations of the section, the court concluded that congressional silence as to foreign corporations did not preclude reading § 1332(c)(1) in a way that gave effect to congressional intent to restrict the availability of diversity over all corporations that were in reality local wherever they might be incorporated.

The Fifth Circuit has continued to apply § 1332(c)(1) to cases involving foreign corporations in a manner consistent with congressional intent to limit diversity jurisdiction whenever the underlying purposes of diversity jurisdiction would not be furthered. In *Panalpina Welttransport GmBh v. Geosource*, 764 F.2d 352 (5th Cir.1985), the court, relying in part on *Jerguson*, explained that neither § 1332(c)(1) nor congressional intent to restrict diversity jurisdiction is limited to cases in which a foreign corporation is really a local concern.

> Like a domestic corporation, an alien corporation may add an additional place of citizenship for diversity purposes if its principal place of business is within one of the states of the United States.... Through multiple places of incorporation, principal place of business, and alter ego or consolidation doctrines, a corporation may become the citizen of several places for purposes of diversity jurisdiction. Such a result is in keeping with Congress' intendment to constrict the availability of diversity jurisdiction. A party cannot, however, pick and choose among the places of citizenship ignoring one or more in an effort to preserve diversity jurisdiction. Such a practice would be contrary to the historical intent of Congress.

*Id.* at 354 (citations omitted). In *Chick Kam Choo v. Exxon Corp.*, 764 F.2d 1148 (5th Cir.1985), the court held that the presence of a Liberian affiliate of Exxon among the defendants defeated diversity in a suit by citizens of Singapore even though the affiliate's principal place of business was in New Jersey.

> [W]e cannot overemphasize the primary underlying purpose of the diversity statute, that is, to provide a separate forum for out-of-state citizens to protect those citizens against the prejudices of local courts and local juries by making available to them the benefits and safeguards of the federal courts. When, as in this case, an alien plaintiff sues in state court another alien (who has a principal place of business in the United States), the danger is remote that the alien plaintiff will benefit from local bias of state courts or juries. Thus, the underlying purpose of diversity jurisdiction simply would not be furthered by its extension under the facts of this case.

*Id.* at 1153 (citation omitted).

■ These Fifth Circuit opinions teach that when confronted with a situation in which a corporate entity—whether foreign or domestic—might fall within the ambit of § 1332(c)(1)'s limitation on diversity jurisdiction a court must determine whether the purposes of diversity jurisdiction would be advanced by affording a federal forum to that litigant. The court concludes that the primary underlying purpose of diversity jurisdiction would not be furthered by affording a federal forum to disputes between alien plaintiffs and a corporation that has a corporate charter from one of the states of the United States but maintains its principal place of business abroad.

■ Resolution of the parties' dispute over the existence of complete diversity will require the court to determine where the Standard Fruit Co. maintains its principal place of business by applying the "total activity test" articulated in *J.A. Olson Co. v. City of Winona, Miss.*, 818 F.2d 401 (5th Cir. 1987). In *Olson* the Fifth Circuit explained that the "total activity test" is a compilation of the "nerve center" and "place of activity" tests. A court should employ a "nerve center" analysis whenever a corporation engages in

"far-flung and varied activities which are carried on in different states." ... In such situations, the nerve center, or corporate offices, will [ordinarily] clearly be the principal place of business ... [because] the corporation's activities are dispersed to the point that no place in which the corporation conducts operations or activities can be denoted "principal."

*Id.* at 407 (citations omitted). When the bulk of a corporation's operations are conducted in one state while its administrative functions are conducted in another the court should use the "place of activity" analysis instead. *Id.* at 408–09.

The "total activity test" acknowledges that neither of these tests is absolute; a court must first analyze the corporation's overall activities, and even then must apply the appropriate test with some flexibility. Thus, while corporate offices are ordinarily the principal place of business of a far-flung corporation, the court might conclude otherwise when the nature of the activities at each location and the relationship between those activities and the corporation's overall purpose indicates that a more appropriate "nerve center" exists—even if that entails ignoring the formal separation between corporate entities. *Id.* at 412 ("[A] corporation's nerve center does not have to be located within the corporate shell, but can be found wherever the nerve center exists."). Likewise, if the bulk of a corporation's operations are "passive," the administrative office that oversees these "activities" may be the principal place of business even though a strict application of the "place of activity" analysis might yield the opposite result. *Id.* at 410 ("New York, the location of the corporation's offices, was therefore not only its nerve center but also the location of its primary activity, that is, the *management* of its [real estate investment] assets [located in other states].").

When reviewing a motion to dismiss for lack of subject matter jurisdiction that appears to involve a need to determine factual matters not contained within the plaintiff's complaint "the district court must give [the party seeking the federal forum] an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss." *Williamson v. Tucker,* 645 F.2d 404, 414 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). At present, the parties have merely introduced purported judicial admissions or determinations in this and other lawsuits; although some of these items are based on deposition testimony, the parties have submitted very few original evidentiary materials. As it appears that the parties have already conducted discovery on this issue, the Standard Fruit Co. will be ordered to submit within 20 days from the entry of this Memorandum and Order evidence sufficient for the court to determine where it maintains its principal place of business. Plaintiffs may file papers in opposition to Standard Fruit Co.'s submission within 40 days from the entry of this Memorandum and Order. Standard Fruit Co. will have 10 days to reply to any opposition.

### b. Does federal question jurisdiction exist?

Defendants also argue that the court can exercise subject matter jurisdiction over the underlying action because that action raises at least one federal question. Defendants argue that one or more of the plaintiffs' causes of action arise under a treaty or under federal common law because the case implicates both international law and the law of foreign relations. The court has been forced to postpone a determination of Dead Sea's immunity under the FSIA and the existence of diversity jurisdiction. Because the resolution of these questions may provide a basis for subject matter jurisdiction, the court will defer considering the existence of federal question jurisdiction until it has determined whether it has jurisdiction under 28 *U.S.C.* § 1380 or diversity jurisdiction.

### IV. *Consolidation*

Shell Oil Co. has moved to consolidate *Carcamo v. Shell Oil Co.,* No. H–94–1359, also pending in the Houston division, with the instant action. Defendants also seek to

consolidate *Rodriguez v. Shell Oil Co.,* No. L–94–49, now pending in the Laredo Division of the Southern District of Texas; and *Erazo v. Shell Oil Co.,* No. M–94–055, now pending in the McAllen Division of the Southern District of Texas, with this action. Since plaintiffs do not oppose consolidation of *Carcamo,* No. H–94–1359, into this action, the Motion to Consolidate of defendant, Shell Oil Co. (Docket Entry No. 19), will be granted as it relates to H–94–1359.

Plaintiffs complain that Shell has not yet responded to their objection to consolidation of this case with the Laredo and McAllen actions on the grounds that Shell has chosen the wrong procedural vehicle to accomplish its objective. Plaintiffs argue that interdivision consolidations within one district must be preceded by a motion to transfer venue pursuant to 28 U.S.C. § 1404(b) ("Upon motion ... any action ... of a civil nature ... may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district."). Shell will be ordered to respond to this objection within 10 days from the entry of this Memorandum and Order.

### V.  *Conclusion and Order*

Dead Sea's removal was proper under 28 U.S.C. § 1441(d) because Dead Sea is a "foreign state." Because the court is unable to determine whether Dead Sea is immune from the jurisdiction of this court Dead Sea is **ORDERED** to provide the court with whatever arguments, authorities, and evidence supporting its claim to immunity it desires to present within 20 days from the entry of this Memorandum and Order. Any party opposing Dead Sea's claim of immunity must file any papers in opposition within 40 days from the entry of this Memorandum and Order. Dead Sea will have 10 days to reply to any oppositions.

Because the court is unable to determine whether diversity jurisdiction exists the Standard Fruit Co. is **ORDERED** to submit within 20 days from the entry of this Memorandum and Order evidence sufficient for the court to determine where it maintains its principal place of business. Plaintiffs may file papers in opposition to Standard Fruit Co.'s submission within 40 days from the entry of this Memorandum and Order. Standard Fruit Co. will have 10 days to reply to any opposition.

Because the court is unable at this time to determine whether it has subject matter jurisdiction over the entire action or over a portion of the action, plaintiffs' Motion to Remand or, in the Alternative, Motion to Sever and Remand (Docket Entry No. 16) is **DENIED.** The court reserves the right to consider the existence of its subject matter jurisdiction and to remand or dismiss the action or any part of the action that falls outside of its original or supplemental jurisdiction.

Shell Oil Company's motion to consolidate *Carcamo v. Shell Oil Co.,* No. H–94–1359, now pending in the Houston Division of the Southern District of Texas, with this action is **GRANTED.** Shell is **ORDERED** to respond to plaintiffs' objections to Shell's attempt to effect an inter-divisional consolidation within 10 days from the entry of this Memorandum and Order.

In order to expedite a final determination of the court's subject matter jurisdiction over this action, all parties filing papers pursuant to this Memorandum and Order should not only file those papers with the clerk, but should also deliver a copy of their papers to the court's chambers. The court encourages defendants to file joint submissions whenever possible.