**Marjorie OCASEK, Special Administrator of the Estate of Bobby Newell, Deceased, Plaintiff,**

v.

**The FLINTKOTE COMPANY, Special Materials, Inc., Cassiar Mining Corp., Advocate Mines, Ltd., Occidental Chemical Corp., Bell Asbestos Mines, Ltd., T & N plc., and Advocate Mines, Ltd., Defendants.**

**No. 92 C 4410.**

United States District Court,
N.D. Illinois, E.D.

Aug. 19, 1992.

Kate Byrne, Cooney and Conway, Chicago, Ill., for plaintiff.

Howard K. Priess, Tressler, Soderstrom, Maloney & Priess, Chicago, Ill., for The Flintkote Co.

Patrick J. Phillips, Jenner & Block, Chicago, Ill., for Asbestos Corp., Ltd. Bell Asbestos Mines.

McCullough, Campbell & Lane, Chicago, Ill., for Advocate Mines, Ltd. Special Materials, Inc.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for Calaveras Asbestos.

Janet Koran, McDermott, Will & Emery, Chicago, Ill., for Cassiar Min., Ltd.

Schopf & Weiss, Chicago, Ill., for Occidental Chemical Corp., Inc.

Heyl, Royster, Voelker, & Allen, Peoria, Ill., for T & N plc.

## MEMORANDUM OPINION AND ORDER

LINDBERG, District Judge.

This action was filed on behalf of then-plaintiff, Bobby Newell, on July 7, 1992. On July 13, 1992, this court, *sua sponte*, dismissed the complaint for failure to adequately plead the court's subject matter jurisdiction. Specifically, plaintiff attempted to plead diversity of citizenship, but alleged that both plaintiff Bobby Newell and defendant Special Materials Inc.–Wisconsin were citizens of Wisconsin. That other defendants were citizens of foreign states was also alleged, but did not give this court diversity jurisdiction. See 28 U.S.C. § 1332(a). See also *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 828, 109 S.Ct. 2218, 2220, 104 L.Ed.2d 893 (1989).

Plaintiff filed a motion to reinstate and for leave to file an amended complaint and a petition for appointment of a special administrator, both of which were denied for want of prosecution on July 23, 1992. Plaintiff's oral motion to reconsider the order of July 23, 1992, was granted on August 5, 1992. Plaintiff's motions to reinstate and to file an amended complaint, and the petition to appoint a special administrator were granted on that same date.

The petition to appoint a special administrator contains a statement that raises serious questions about the initial filing of this action. In the petition for the appointment of a special administrator, it is stated that, "The Plaintiff, BOBBY NEWELL, died on May 31, 1991." It seems obvious that Bobby Newell did not have the capacity to bring this action on July 7, 1992, when the complaint was filed. Nonetheless, counsel filed a complaint denominating Bobby Newell as plaintiff, beginning, "NOW COMES the plaintiff, BOBBY NEWELL, by and through his attorneys;" stating that, "The plaintiff, BOBBY NEWELL, is a citizen of the State of Wisconsin;" and not even hinting at his demise over thirteen months earlier. Moreover, counsel went so far as to file an appearance on behalf of "[p]laintiff" and to file affidavits evidencing compliance with General Rule 39 for "[p]laintiff." Apart from the possible rules violated by the filing of the complaint, appearance, and affidavits (see, e.g., FRCP 11; U.S.Dist.Ct., N.D.Ill., RPC 3.3(a)(1), (8)), the lack of a proper party plaintiff at the outset of this action could have resulted in substantial waste of time and effort by the court and counsel.

The appointment of the special administrator and the filing of the amended complaint have corrected the lack of a plaintiff in this case as of August 5, 1992. To correct the other problems created by the initial filing, counsel are directed to file an

appearance on behalf of the plaintiff, special administrator Marjorie Ocasek. In addition, they shall file new affidavits. When they file the new affidavits, they shall not strike the last paragraph as they did in their original affidavits, but shall instead comply with that paragraph's requirements. See U.S.Dist.Ct., N.D.Ill., G.R. 39.

In the amended complaint, it is alleged that, "The plaintiff, MARJORIE OCASEK, is a citizen of the State of Illinois." This does not change the situation for purposes of this court's diversity jurisdiction; for diversity purposes "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent" meaning plaintiff is still considered a citizen of Wisconsin, the state of which the late Bobby Newell was a citizen. 28 U.S.C. § 1332(c)(2). Neither in the amended complaint nor in the motion to reinstate and for leave to file the amended complaint does plaintiff contend that this court has diversity jurisdiction.

Rather, plaintiff in the amended complaint alleges:

The court has jurisdiction over the subject matter of this action under sections 28 U.S.C. § 1330, 1603, 1605(d). Defendant Asbestos Corporation, Ltd. (ACL) is an instrumentality of Canada. The matter in controversy exceeds the sum of $50,000.00 exclusive of interests [sic] and costs.

In the motion to reinstate and for leave to file an amended complaint plaintiff states:

Jurisdiction in fact exists pursuant to 28 U.S.C. § 1330 and § 1603 and § 1605(d) inasmuch as Defendant, ACL in [sic] an instrumentality of the Government of Canada, a foreign state. (attached hereto is a copy of *Rutkowski v. ACL*, 83 C 2339, a Northern District opinion recognizing ACL's status.)

There are an allegation of fact and a citation in these assertions that are of no significance to this court's subject matter jurisdiction.

The amount in controversy pled is irrelevant, as the statute under which jurisdiction is asserted provides that, "The district courts shall have original jurisdiction without regard to amount in controversy." 28 U.S.C. § 1330(a). The citation of section 1605(d) is puzzling, as that statute provides:

A foreign state shall not be immune from the jurisdiction of the courts of the United States in any action to foreclose a preferred mortgage, as defined in the Ship Mortgage Act, 1920 (46 U.S.C. 911 and following). Such action shall be brought, heard, and determined in accordance with the provisions of that Act and in accordance with the principles of law and rules of practice of suits in rem, whenever it appears that had the vessel been privately owned and possessed a suit in rem might have been maintained.

28 U.S.C. § 1605(d). Since this is not an "action to foreclose a preferred mortgage, as defined in the Ship Mortgage Act, 1920," section 1605(d) has no application in this case.

The other citations do have a bearing on this court's subject matter jurisdiction in this case. Section 1330 provides in part:

The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement.

28 U.S.C. § 1330(a). The relevant portions of section 1603 provide:

For purposes of this chapter—

(a) A "foreign state" … includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).

(b) An "agency or instrumentality of a foreign state" means any entity—

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603. With respect to ACL, there is no question that the first and third requirements for it to be an "agency or instrumentality of a foreign state" are met. 28 U.S.C. § 1603(b)(1), (3). Only the second requirement is in question.

The case on which plaintiff relies for the proposition that ACL is an instrumentality of Canada states:

> In February 1982, [the Province of] Quebec did not own more than 50 percent of ACL. At that time the province owned all of a company (SNA) which owned 51.2 percent of a company (Mines–S.N.A.) which owned 54.6 percent of ACL. Yet, there is no question that, by holding majority positions, Quebec controlled each of the corporations down this chain.... Because we focus on substance rather than the corporate form employed by Canada, ... we hold that ACL is an "instrumentality" of Canada.

*Rutkowski v. Occidental Chemical Corporation*, No. 83 C 2339, slip op. at 3, 1988 WL 107342 (N.D.Ill., Oct. 6, 1988). On the facts stated in the *Rutkowski* opinion, this court reaches the same conclusion based simply on a reading of the language of the statute.

There is no question that the Province of Quebec is a political subdivision of the foreign state of Canada. Quebec owned all of SNA. Therefore, SNA was an entity "a majority of whose shares or other ownership interest is owned by a foreign state." 28 U.S.C. § 1603(b)(2). SNA was accordingly an "agency or instrumentality of a foreign state or a political subdivision thereof," 28 U.S.C. § 1603(b), and therefore was included in the term "foreign state." 28 U.S.C. § 1603(a). SNA owned 51.2 percent of Mines–S.N.A. Therefore, Mines–S.N.A. was an entity "a majority of whose shares or other ownership interest is owned by a foreign state." 28 U.S.C. § 1603(b)(2). Mines–S.N.A. was accordingly an "agency or instrumentality of a for-

eign state," 28 U.S.C. § 1603(b), and therefore was included in the term "foreign state." 28 U.S.C. § 1603(a). Mines–S.N.A. owned 54.6 percent of ACL. Therefore, ACL was an entity "a majority of whose shares or other ownership interest is owned by a foreign state." 28 U.S.C. § 1603(b)(2). ACL was accordingly an "agency or instrumentality of a foreign state," 28 U.S.C. § 1603(b), and therefore was included in the term "foreign state." 28 U.S.C. § 1603(a). Finally, because ACL was included in the term "foreign state" as defined in section 1603, and because the case was one for which foreign states are not immune, subject matter jurisdiction over the action in the *Rutkowski* case existed under section 1330. 28 U.S.C. §§ 1330(a), 1603(a), (b), 1605.

All this was true in February of 1982; it may or may not be true in July and August of 1992. While it is safe to assume that the Province of Quebec remains a political subdivision of Canada, it does not seem quite so safe to assume that (1) Quebec still owns a majority of the ownership interest in SNA, (2) SNA still owns a majority of the ownership interest in Mines–S.N.A., and (3) Mines–S.N.A. still owns a majority of the ownership interest in ACL. In other words, while the facts in *Rutkowski* demonstrate that ACL was a "foreign state" in February 1982, they do not demonstrate that it is a "foreign state" at the time relevant to this court's subject matter jurisdiction over the case at bar.

The amended complaint does not adequately plead this court's subject matter jurisdiction because it does not plead facts sufficient for this court to determine that ACL in July and August of 1992 is a "foreign state" as defined in section 1603. 28 U.S.C. § 1603(a), (b). The court is therefore *sua sponte* dismissing the amended complaint. If ACL is a "foreign state," it appears that it would not be immune from suit in this action. See 28 U.S.C. § 1605(a)(2), (5). It may therefore be possible for plaintiff to plead this court's subject matter jurisdiction under section 1330. 28 U.S.C. § 1330. Because it may be possible to correct the deficiency in pleading this court's subject matter jurisdiction, plaintiff

is granted leave to file a second amended complaint.

ORDERED: Counsel for plaintiff shall file an appearance and affidavits of compliance with General Rule 39 including all of the paragraphs required in such affidavits on or before September 1, 1992. The court *sua sponte* dismisses the amended complaint. Plaintiff is granted leave to file a second amended complaint on or before September 21, 1992.