Jugobanka A.D. BELGRADE, Plaintiff,

v.

SIDEX INTERNATIONAL FURNITURE CORPORATION, et al., Defendants.

Jugobanka A.D. BELGRADE, Plaintiff,

v.

U.C.F. INTERNATIONAL TRADING, INC., et ano., Defendants.

Jugobanka A.D. BELGRADE, Plaintiff,

v.

EURO INTERNATIONAL PTY., LTD., et ano., Defendants.

Jugobanka A.D. BELGRADE, Plaintiff,

v.

SK PRODUCTS CORP., et ano., Defendants.

Nos. 97 Civ. 3376(LAK), 97 Civ. 3912(LAK), 97 Civ. 3913(LAK) and 97 Civ. 6478(LAK).

United States District Court, S.D. New York.

March 31, 1998.

Deyan Ranko Brashich, New York, NY, for plaintiff.

Ariane D. Austin, Andrew J. Rossman, Jonathan M. Jacobson, Akin, Gump, Strauss, Hauer & Feld, L.L.P., New York, NY, Edward O. Delaney, Frank McCloskey, Bart A. Karwath, Mark J. Dinsmore, Barnes & Thornburg, Indianapolis, IN, for defendants Sidex International Furniture Corporation, S.O.U.R. Sipad, Sarajevo, and its successor in interest Sipad Holding Sarajevo, Sipad Export–Import, Sarajevo, and its successor in interest, Sipad Export–Import, Sarajevo.

Carolyn T. Ellis, Coudert Brothers, New York, NY, for defendants Slovenijales D.D., U.C.F. International Trading, Inc., and SK Products Corp.

Wendy H. Schwartz, Assistant United States Attorney, Mary Jo White, United States Attorney, Steven D. McCreary, David R. Andrews, United States Department of State, Washington, DC.

## OPINION

KAPLAN, District Judge.

In the early part of the 1990's, the secession of Slovenia, Croatia, and Bosnia and Herzogovina led to the dissolution of the Socialist Federated Republic of Yugoslavia ("SFRY"). Tidal forces driven by ethnic, religious, and nationalistic rivalries in the wake of that collapse have inflicted an extended period of strife on the region. These four actions are part of that turmoil.

Jugobanka A.D. Belgrade ("Jugobanka"), a banking corporation organized under the laws of the Federal Republic of Yugoslavia (Serbia & Montenegro) ("FRY (S & M)"), claims to be the successor of Jugobanka United Bank ("United") and Jugobanka D.D. Belgrade ("DD Belgrade"), both of which were organized under the laws of the SFRY. It here sues to collect ostensibly ordinary commercial debts and guarantees contracted by the defendants with United and DD Belgrade prior to the dissolution of the SFRY.

The defendants contend that the concededly defaulted obligations may not be pursued here because (1) Jugobanka is an agency or instrumentality of the FRY (S & M), an unrecognized foreign state, and therefore lacks standing, and (2) the adjudication of these claims would require the Court to address non-justiciable political questions relating to the dissolution of the SFRY. They assert, moreover, that the loans at issue were made from the currency reserves of the central bank of the former SFRY in furtherance of a governmental export program and therefore are assets of the SFRY. In defendants' submission, to permit plaintiff, allegedly an instrumentality of the FRY (S & M), to

recover would provide these assets to the FRY (S & M) in derogation of the rights of the four other putative successors of the SFRY. One of the defendants, moreover, has asserted counterclaims by which it seeks to hold Jugobanka liable for alleged confiscation by the FRY (S & M) of its assets located in the territory of the FRY (S & M).

*Background*

*The Parties*

As noted, Jugobanka is a banking corporation organized under the laws of the FRY (S & M). It contends that it is the sole successor to DD Belgrade, formerly United, which were organized under the laws of the SFRY.[1]

The defendants in three of the actions (the "Slovenijales Actions") are Slovenijales D.D. ("Slovenijales") and three of its affiliates, U.C.F. International Trading, Inc. ("UCF"), SK Products Corp. ("SK"), and Euro International Pty., Ltd. ("Euro"). Although Slovenijales now is a privately owned manufacturing and export corporation organized under the laws of the Republic of Slovenia, its roots are found in the Communist past of the former SFRY. It was organized in 1948 as a "state-owned republic commercial enterprise." It was reconstituted as a "socially-owned" company in 1974 before being privatized in 1996. Its affiliates, UCF, SK and Euro, all are organized under the laws of western nations.

The defendants in the fourth action (the "Sidex Action") are Sidex International Furniture Corporation ("Sidex"), Sipad Export–Import Sarajevo ("SEI"), S.O.U.R. Sipad, Sarajevo ("SOUR"), and Sipad Holding Sarajevo ("SHS"). SEI is organized under the laws of, and owned by, the Federation of Bosnia and Herzegovina ("FBH"). Sidex is a New York corporation and wholly owned subsidiary of SEI. SOUR was a "composite organization of associated labor" organized under the laws of the former SFRY. SHS, successor-in-interest to SOUR, is a company organized under the laws of, and owned by, the FBH.

1. Vučković Decl. ¶¶ 2–7.

*The Credit Lines and Guarantees*

At the heart of these lawsuits are credit facilities and guarantees executed between the various defendants and both United and DD Belgrade. They may be summarized as follows:

| Year | Credit Facility Amount | Lender | Obligor | Guarantor |
|---|---|---|---|---|
| 1989 | $300,000 | United | Euro | Slovenijales |
| 1989 | $6,500,000 | United | Sidex | SEI and SOUR |
| 1990 | $300,000 | DD Belgrade | Euro | Slovenijales |
| 1990 | $350,000 | DD Belgrade | UCF | Slovenijales |
| 1990 | $5,000,000 | DD Belgrade | SK | Slovenijales |
| 1990 | $6,500,000 | DD Belgrade | Sidex | SEI and SOUR |

The credit lines have been drawn down either fully or to a substantial extent. Initial demand was made at some point between June 1, 1992 and June 5, 1993.[2] Subsequent attempts to negotiate a settlement were unsuccessful.[3] Jugobanka now seeks to collect the balances allegedly due.

*The Yugoslav Crisis and United States Sanctions*

In reaction to the Yugoslav crisis, the United States has taken a number of actions, some of which are relevant here.

On May 30, 1992, President Bush, acting under International Emergency Economic Powers Act ("IEEPA"),[4] issued an executive order blocking "all property and interests in property in the name of the Government of the Socialist Federal Republic of Yugoslavia or the Government of the Federal Republic of Yugoslavia that are in the United States . . . ."[5] On April 25, 1993, President Clinton blocked property and interests in property of all commercial, industrial, and public utility entities organized or located in the FRY(S & M).[6] These and other executive orders have been implemented by the Department of the Treasury through the Federal Republic of Yugoslavia (Serbia and Montenegro) and Bosnian Serb–Controlled Areas of the Republic of Bosnia and Herzegovina Sanctions Regulations (the "Blocking Regulations").[7] The Blocking Regulations specifically identify DD Belgrade as a "blocked entity."[8]

The Blocking Regulations prohibit transfer of any property or interest in property of a blocked entity without a license from the Office of Foreign Asset Control ("OFAC") in the Department of the Treasury.[9] Any "attachment, judgment, decree, lien, execution, garnishment, or other judicial process" pertaining to blocked property is "null and void"

**2.** Tr., Jan. 12, 1998, at 13.

**3.** *Id.* at 14.

**4.** 50 U.S.C. §§ 1701 *et seq.* The statute grants the President the power to " 'block' the assets of foreign governments and their nationals, and to prohibit economic transactions by or with designated foreign nationals or foreign countries, in order to deal with 'any unusual or extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States.' " Statement of Interest of the United States, filed in the Slovenijales Actions, at 5 ("Slovenijales SOI").

**5.** Exec.Ord. 12808, 57 Fed.Reg. 23299 (May 30, 1992).

**6.** Exec.Ord. 12846, 58 Fed.Reg. 25771 (April 25, 1993).

**7.** 31 C.F.R. Part 585 (1998).

**8.** *Id.* at Ch. V., App. A.

**9.** *Id.* at § 585.501.

with respect to that property absent an OFAC license.[10]

*These Actions*

Jugobanka filed each of these actions in New York Supreme Court, New York County in early 1997. Each complaint alleges that the defendants, prior to March 31, 1993, defaulted on their obligations relating to the lines of credit extended by United and DD Belgrade and, further, that Jugobanka is the entity entitled to enforce these loan agreements. Slovenijales has counterclaimed for more than $20 million, alleging that Jugobanka is liable to it for seizure by the government of the FRY(S & M) of Slovenijales' assets in Serbia and Montenegro as well as the conversion by Jugoslovenska Izvozna i Kreditna Banka ("JIK Bank"), allegedly an FRY(S & M) instrumentality, of more than $7.5 million of deposits owned by Slovenijales. All four actions were removed to this Court.

*The Motions*

All of the defendants seek dismissal of Jugobanka's complaints, either on their face or by summary judgment. Jugobanka moves to remand the Slovenijales actions to state court, for summary judgment on its claims in all four actions, to dismiss Slovenijales' counterclaims, and for a default judgment against Euro.[11] The United States has filed a Statement of Interest in each action pursuant to 28 U.S.C. § 517.

*Discussion*

*FSIA Jurisdiction*

The amended notice of removal in the Slovenijales Actions alleges that removal was proper on either of two grounds. First, Slovenijales asserts that it was an agency or instrumentality of a foreign sovereign at relevant times[12] and therefore is entitled to a federal forum under the Foreign Sovereign Immunities Act ("FSIA").[13] The removing defendants allege also that the Court has federal question jurisdiction[14] because the adjudication of Jugobanka's claims would require interpretation of the Blocking Regulations and involve "fundamental issues of foreign policy."[15]

Any civil action brought in a state court against a "foreign state" may be removed by the foreign state to the district court for the district in which the action is pending.[16] "Foreign state" is defined to include an "agency or instrumentality of a foreign state."[17] An "agency or instrumentality" in turn is defined in relevant part as an entity "which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof."[18]

The removal petition alleges that Slovenijales, the removing defendant, was owned by the Republic of Slovenia, a constituent republic of the former SFRY, from 1948 to 1974 and then was a "socially-owned" enterprise until 1996.[19] It alleges further that the loans were extended to UCF, Euro, and SK in 1989 and 1990 and that debts pursuant to those lines of credit became due in 1990 and 1991.[20] Finally, the removal petition alleges that requests for payment were made prior to 1996 and that Slovenijales attempted to negotiate a global settlement of claims relat-

10. *Id.* at § 585.202.

11. Defendants in the Sidex Action have moved also for a stay or abstention in favor of the international negotiations taking place among the putative successor states to the SFRY.

12. Amended Notice of Removal ("Am.Rem. Not.") ¶¶ 1, 6, 9.

13. 28 U.S.C. § 1441(d); 28 U.S.C. §§ 1603(a), 1603(b)(2).

14. 28 U.S.C. § 1441(b).

15. Memorandum in Opposition to Removal ("Mem.Opp.Rem.") 30–35; Notice of Removal ("Rem.Not.") ¶¶ 9, 10.

16. 28 U.S.C. § 1441(d).

17. 28 U.S.C. § 1603(a).

18. 28 U.S.C. §§ 1441(d), 1603(b)(2).

19. Am.Rem. Not. ¶ 19; *accord,* Tos Decl. ¶¶ 3–6.

20. Am.Rem. Not. ¶ 9.

ing to these debts in or about 1992 and 1993.[21]

The issue raised by Jugobanka's motions to remand[22] the Slovenijales Actions is whether these facts, if true, would demonstrate that Slovenijales was an agency or instrumentality of the Republic of Slovenia during a time period salient to the jurisdictional inquiry. The dispositive questions therefore are whether the time period that controls for jurisdictional purposes extends prior to Slovenijales' 1996 privatization and, if so, whether a socially-owned enterprise of the Republic of Slovenia was an agency or instrumentality of a foreign state.

The question of the time period relevant for the sovereign control inquiry is one that has been addressed in other jurisdictions but has not been answered definitively in this Circuit.[23] Two other circuits have ruled that the relevant time period is that in which the conduct at issue in the lawsuit took place.[24] Other courts, however, have suggested that sovereign control should be measured with reference to the time the lawsuit was filed.[25] Although these cases at first appear inconsistent, they can be woven into a unified approach consistent with the objectives of the FSIA.

As a threshold matter, the Court observes that the jurisdiction imparted by the FSIA is premised upon specific considerations of international comity and non-interference with the executive branch's foreign policy authority.

"[E]nactment of the FSIA was in response to unique policy considerations touching on the international relations of the. United States.... Indeed, the Supreme Court has acknowledged Congress' deliberate intent to circumvent much of the potential for interference with the federal government's foreign relations caused by lack of uniformity and local bias in civil caselaw [*sic*] involving foreign states as defendants by channeling private actions against foreign sovereigns away from the state forums and into federal courts to be adjudicated in nonjury trials." [26]

These "unique policy considerations" provide the analytical undergirding upon which to harmonize the seemingly incompatible lines of cases.

There are two opinions that have addressed this issue directly. The Eighth Circuit in *General Electric Capital Corp. v. Grossman* [27] held that Air Canada was a "foreign state" for FSIA purposes, even though it had been privatized prior to the

---

21. *Id.*

22. Jugobanka does not press its motions vigorously. "This is a protective motion.... Should Plaintiff's belief that Slovenijales D.D. Defendant is but a 'socially owned enterprise' and, thus, not an instrumentality or organ of a foreign state be proven wrong, Plaintiff shall promptly withdraw this motion." Motion for Remand ("Mot.Rem.") at 2. At oral argument, plaintiff's counsel made the tepid assertion that the argument against removal jurisdiction is in the nature of an "academic exercise." Tr., Jan. 12, 1998, at 3. The Court, however, is obliged to consider its jurisdiction irrespective of whether the issue is pressed by the parties.

23. *See Cargill International S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1015–16 (2d Cir.1993); *cf. Morgan Guaranty Trust Co. v. Republic of Palau*, 924 F.2d 1237 (2d Cir.1991) (held that Palau not a sovereign state without specific comment on the time-of-inquiry issue); *Braka v. Bancomer, S.A.*, 589 F.Supp. 1465, 1469 (S.D.N.Y. 1984), *aff'd*, 762 F.2d 222 (2d Cir.1985) (time period relevant for the determination of whether entity was a state instrumentality was not specifically addressed; the court did, however, focus on

the date of the underlying conduct in order to resolve a different question under the FSIA).

24. *See, e.g., General Electric Capital Corp. v. Grossman*, 991 F.2d 1376, 1380–82 (8th Cir. 1993); *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 450 (6th Cir.1988).

25. *See, e.g., Jones v. Petty–Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1064–65 (5th Cir.), *cert. denied*, 506 U.S. 867, 113 S.Ct. 193, 121 L.Ed.2d 136 (1992); *Wolf v. Banco Nacional de Mexico, S.A.*, 739 F.2d 1458, 1460 (9th Cir.1984), *cert. denied*, 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 778 (1985); *Ocasek v. Flintkote Co.*, 796 F.Supp. 362, 365 (N.D.Ill.1992).

26. *In re Texas Eastern Trans. PCB Contamination Lit.*, 15 F.3d 1230, 1239 (3d Cir.1994) (citing *Ruggiero v. Compania Peruana de Vapores*, 639 F.2d 872 (2d Cir.1981); *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480 (1983); H.R.Rep. No. 94–1487, 94th Cong., 2d Sess. 13 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6611–12).

27. 991 F.2d 1376.

filing of the lawsuit, because it had been state owned at the time of the conduct at issue in the action.[28] In so doing, it rejected an analogy to the approach taken in the context of diversity jurisdiction, which focuses on the time of filing rather than the time of the underlying conduct,[29] on the basis of the particular policy considerations underlying the FSIA.[30] The court also distinguished two FSIA cases that apparently had focused on the time of filing on the ground that the defendants in those cases were not foreign states at the time of the underlying conduct, but had become so by the time or after the suit was filed.[31] The Eighth Circuit thus regarded as dispositive the fact that the lawsuit called into question the conduct of an entity at a time when the entity was a state instrumentality.

The Sixth Circuit's opinion in *Gould Inc. v. Pechiney Ugine Kuhlmann & Trefimetaux* [32] is entirely consistent with *Grossman. Gould* considered whether certain defendants were entitled to invoke sovereign immunity under the FSIA in the context of claims including allegations of unfair competition, interference with contractual relations, and the unlawful appropriation of proprietary information.[33] At the time of the underlying events, the defendants were instrumentalities of the Republic of France, but at least one defendant had been privatized before the suit was filed.[34] The circuit held that the time period relevant for the jurisdictional inquiry was the time of the underlying conduct rather than the time of filing.[35] In reaching this conclusion, *Gould* relied on the Supreme Court's decision in *The Western Maid*, which held that events

occurring after the privatization of a formerly government-owned vessel could not give rise to government liability.[36] The clear implication of *Gould*'s citation to *The Western Maid* is that a foreign state's potential liability is an important factor in determining whether federal jurisdiction will lie under the FSIA.

 The focus on the potential liability or the propriety of the conduct of a foreign sovereign is the key to understanding why some cases appear to hold that the relevant time of inquiry is the time of the underlying conduct while other cases focus on the time the lawsuit was filed. The particular concerns that underlie FSIA jurisdiction are safeguarded under both approaches. The presence of party which is a foreign sovereign or its instrumentality at the time of suit directly implicates the FSIA's purpose of channeling lawsuits against foreign sovereigns into the federal courts. It is therefore natural that some cases appear to focus on the time the lawsuit is filed to determine whether FSIA jurisdiction is available.[37] The FSIA's policies, however, are implicated also when a party was owned or controlled by a foreign sovereign at the time the conduct underlying the suit occurred, even if the foreign sovereign no longer owns or controls the party at the time the suit is filed. In such a case, the conduct and potential liability of the foreign sovereign are the subject of judicial scrutiny, which implicates the dignity of the foreign sovereign and triggers the policy concerns of the FSIA.[38] In that situation, the focus would appear to be on the time of the underlying conduct rather than the time of filing. In either case, however, the policy

**28.** *Id.*

**29.** *Id.* at 1381–82.

**30.** *Id.* at 1382.

**31.** *Id.* at 1381 (citing *Callejo v. Bancomer, S.A.,* 764 F.2d 1101, 1106 (5th Cir.1985); *Wolf,* 739 F.2d at 1460; *Braka v. Bancomer, S.A.,* 589 F.Supp. 1465).

**32.** 853 F.2d 445.

**33.** *Id.* at 447.

**34.** *Id.* at 447, 449.

**35.** *Id.* at 450.

**36.** 257 U.S. 419, 42 S.Ct. 159, 66 L.Ed. 299 (1922).

**37.** *See, e.g., Grossman,* 991 F.2d at 1381 (citing *Callejo,* 764 F.2d at 1106; *Wolf,* 739 F.2d at 1460; *Braka,* 589 F.Supp. 1465); *cf. Jones,* 954 F.2d 1061 (defendants asserted that removal under FSIA was justified by the subsequent addition of foreign state defendants; assumed but not decided that such removal was proper).

**38.** *See, e.g., Grossman,* 991 F.2d 1376; *Gould,* 853 F.2d 445.

behind the FSIA is advanced. Thus, in this Court's view, the correct approach under the FSIA is to ask whether the underlying conduct took place on the foreign state's watch, even if that state is no longer in control of the party by the time of the lawsuit, or, alternatively, whether the defendant currently a foreign state, regardless of its status at the time of the underlying conduct. In either circumstance, federal jurisdiction will lie under the FSIA.[39]

■ This case involves, among other things, the enforceability of guarantees executed by Slovenijales when it was a socially-owned enterprise of the Republic of Slovenia. It is alleged wrongfully to have rejected demands for payment when it held this status. Jurisdiction under the FSIA thus depends upon whether a socially-owned enterprise is an agency or instrumentality of a foreign sovereign.

Prior to 1974, Slovenijales was owned both in name and in fact by the Republic of Slovenia.[40] In 1974, Slovenijales and other state-owned companies became socially-owned enterprises under the new constitution of the SFRY.[41] Though no longer retaining explicit nominal ownership, the state remained the equitable owner of socially-owned property. For example. the law of the SFRY provided that upon dissolution or bankruptcy of a socially-owned enterprise, assets not allocated to creditors were the property of the relevant "socio-political community" for that enterprise.[42] A "socio-political community" was a subdivision of the government of the SFRY

such as the Republic of Slovenia.[43] Significant also is the fact that Slovenijales was privatized under legislation enacted by the SFRY in 1989 and 1990,[44] a fact that supports the view that Slovenijales was owned by the state prior to privatization. Further, SFRY law provided that proceeds from the sale of socially-owned capital were the property of the Development Fund operated by the republic or other governmental subdivision of the SFRY relevant to that particular enterprise.[45] Indeed, upon the privatization of Slovenijales in 1996, the proceeds of the sale of the company were paid to the Development Fund operated by the Republic of Slovenia.[46] Finally, the government retained extensive control over the affairs of socially-owned enterprises, including the right to override the decisions of management or even to remove and replace the managers.[47]

This evidence is uncontested by Jugobanka, which relies instead upon the 1977 decision in *Edlow Int'l Co. v. Nuklearna Elektrarna Krsko*[48] in support of its contention that social-ownership does not confer agency or instrumentality status. *Edlow* addressed whether the defendant, a "workers' organization" under the laws of the SFRY, satisfied the FSIA's jurisdictional requirement that a foreign state or political subdivision thereof own a majority interest in the entity in question.[49] The court in *Edlow* considered and rejected the argument that the SFRY necessarily owned a majority interest in the defendant because there was no such thing as private property in the SFRY.[50] Placing special emphasis on the lack of evidence of state

---

**39.** To the extent that *Ocasek v. Flintkote Co.*, 796 F.Supp. 362 (N.D.Ill.1992), is inconsistent with this approach, it is unpersuasive. *Ocasek* considered whether it had been adequately demonstrated that the defendant entity was controlled by Quebec, a political subdivision of Canada. *Id.* at 365. The court implied that the relevant time of inquiry was the time period in which the original and amended complaints were filed. This implication was not supported, however, by any authority or analysis of the FSIA. Nor did the opinion indicate the time period during which the underlying conduct took place.

**40.** Tos Decl. ¶¶ 3–6.

**41.** *Id.* at ¶ 6.

**42.** *Id.* at ¶¶ 9, 10.

**43.** *Id.* at ¶ 8.

**44.** *Id.* at ¶ 11.

**45.** *Id.* at ¶ 12.

**46.** *Id.*

**47.** *Id.* at ¶ 14 (citing Art. 622 of the Associated Labour Act of 1977; Arts. 179, 180 of the Enterprises Law).

**48.** 441 F.Supp. 827 (D.D.C.1977).

**49.** *Id.* at 831.

**50.** *Id.*

ownership, the court concluded that a foreign state's system of property ownership, without more, cannot be determinative of agency or instrumentality status.[51] Instead, *Edlow* held, courts should focus on the degree of control exercised over the entity by the state.[52]

*Edlow* is not persuasive here. Slovenijales has provided the Court with substantial and unrebutted evidence supporting its contention that the state held equitable ownership of socially-owned enterprises.[53] Furthermore, to the extent that *Edlow* is read to require the exercise of control by the state over the operations of the purported agency or instrumentality, *Edlow* is inconsistent with the plain language of the FSIA, which simply asks whether the state is the majority owner of the entity.[54] As Slovenijales has come forward with substantial evidence that socially-owned enterprises were owned by the SFRY or political subdivisions thereof and that Slovenijales was a socially-owned enterprise at the time of the events underlying these lawsuits, the Court holds that removal was proper under the FSIA. Jugobanka's motions to remand the Slovenijales Actions is therefore are denied.[55]

*Justiciability of Jugobanka's Claims*

■ Defendants next call into question the justiciability of Jugobanka's claims. They assert that adjudication of Jugobanka's claims would run afoul of the political question doctrine.

In *Baker v. Carr*,[56] the Supreme Court indicated that certain questions lie beyond the competence and proper institutional role of the federal courts and therefore are not justiciable. Their hallmarks include their commitment by the Constitution to other branches of government, a lack of judicially discoverable or manageable standards for their resolution, the impossibility of decision absent a policy determination dependent upon the exercise of nonjudicial discretion, the need for deference to the political branches, and the potential for embarrassment arising from institutions of our government making different pronouncements on the same issue.[57] More recently, the Court summarized the *Baker* analysis by stating that the determinants are whether the claim admits of judicial resolution and is consistent with the separation of powers.[58]

These principles plainly would preclude this Court from allocating assets of the former SFRY among the putative successor states. A determination as to which of the putative successors of the former SFRY should be regarded by the United States as legitimate or as to their rights in property of that former nation would trench impermissibly upon the role of the political branches and, moreover, call for the exercise of nonjudicial discretion, unguided by the conventional sources of judicial decisions. As the Second Circuit said in *Can v. United States*:[59]

"courts have no standards for judging a claim of succession to a former sovereign, even where that succession is only to property rather than to government power. The recognition of any rights of succession to a foreign sovereign's power or property is in the first instance constitutionally committed to the executive branch of government, not to the judiciary."[60]

51. *Id.* at 832.

52. *Id.*

53. Tos Decl. ¶¶ 6–14.

54. 28 U.S.C. § 1603(b)(2); *see also Matter of Arbitration Between Trans Chem. Ltd. and China Nat'l Machinery Im. & Ex. Corp.*, 978 F.Supp. 266, 291 n. 117 (S.D.Tex.1997) (refusing to apply control test to majority ownership requirement under FSIA); *Delgado v. Shell Oil Co.*, 890 F.Supp. 1315 (S.D.Tex.1995) (same).

55. Having held that removal was proper under the FSIA, the Court need not consider defen-

dants' arguments based on federal question jurisdiction.

56. 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

57. *Id.* 369 U.S. at 217.

58. *Powell v. McCormack*, 395 U.S. 486, 516–17, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969).

59. 14 F.3d 160 (2d Cir.1994).

60. *Id.* at 163. *See also Kadic v. Karadzic*, 70 F.3d 232 (2d Cir.1995); *Fed. Rep. of Yugoslavia v. Park–71st Corp.*, 913 F.Supp. 191 (S.D.N.Y. 1995).

The State Department agrees "that the ultimate allocation of assets and liabilities of the former SFRY among the successor states is a political question."[61] It nevertheless resists dismissal of Jugobanka's claim under the political question doctrine, essentially because the Blocking Regulations would bring any funds realized by Jugobanka on its claims against the defendants under the control of the United States for eventual allocation in accordance with executive branch policy.[62]

The Court acknowledges that entertaining Jugobanka's claim would not interfere with, and might advance, United States foreign policy regarding the former Yugoslavia. In consequence, to the extent the political question doctrine rests on the need to avoid conflict with the political branches concerning matters within their exclusive or primary spheres, it has no bearing. But the political question doctrine is responsive to other concerns as well.

The defendants here argue that the loans upon which Jugobanka seeks to realize were made from foreign currency reserves of the former SFRY that were allocated by its central bank to United and DD Belgrade and loaned by them to the defendants for state purposes. In order to prevail, Jugobanka must establish that it succeeded to this property of those agencies or instrumentalities of the former SFRY. In consequence, the Court cannot rule in favor of Jugobanka without deciding precisely the sort of state succession issue that the Second Circuit in *Can* found to be a nonjusticiable political question.

The State Department's contention that the Blocking Regulations solve this problem, although not without some initial appeal, ultimately is unpersuasive. To begin with, justi-ciability goes to the constitutional and prudential limits of the judicial power.[63] While the views of the executive branch often will have an important bearing on a court's determination, especially where the concern is possible conflict with a coordinate branch of government, they are not conclusive. As Justice Brennan wrote, "[t]he Executive Branch ... cannot by simple stipulation change a political question into a cognizable claim."[64] Equally important, the State Department's reliance on the Blocking Regulations as eliminating the justiciability issue is misguided.

The State Department's position rests, first of all, on the premise that there is no need to decide whether Jugobanka succeeded to these assets because any recovery would be blocked and allocated among the putative successor states only in accordance with their interests as eventually determined by negotiation or other nonjudicial means. The difficulty with that argument, however, is that Jugobanka's claim to the assets, blocked or not, depends on its contention that it succeeded to assets of United and DD Belgrade, which were instrumentalities of the former SFRY. In consequence, it can prevail here only on two hypotheses: either the Court must determine that it succeeded to those assets or it must conclude that Jugobanka's contention that it did so is sufficient basis for maintenance of this suit. But neither of these hypotheses avails Jugobanka.

As noted above, the Court may not determine that these loans belong to Jugobanka, so the first hypothesis is excluded by the political question doctrine. The second, moreover, runs afoul of the principle that only parties with standing may pursue claims in federal courts, which requires that the plaintiff allege a concrete injury in fact caused by the defendant's actions *and* that

---

**61.** Slovenijales SOI, at 20.

**62.** *Id.* at 20–21.

**63.** 13 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE· JURISDICTION 2d § 3529 (2d ed.1984).

**64.** *First Nat'l City Bank v. Banco Nacional de Cuba*, 406 U.S. 759, 788–89, 92 S.Ct. 1808, 32 L.Ed.2d 466 (1972) (Brennan, J., dissenting). This aspect of Justice Brennan's dissent, which was written on behalf of four justices, was adopted also by Justice Douglas in his concurring opinion in which he observed that a rule of obligatory deference to the views of the executive branch regarding justiciability would render the a court "a mere errand boy for the Executive Branch which may choose to pick some people's chestnuts from the fire, but not others." *Id.* 406 U.S. at 773 (Douglas, J., concurring). It therefore commanded a majority of the Court.

"it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." [65] Jugobanka here alleges the requisite injury caused by the defendants, but the existence of the political dispute over state succession means that the extent to which Jugobanka actually would benefit by a decision in its favor would be purely speculative.

The State Department argues also that the Court is "merely" being asked "to aggregate one pool of assets that will be held under United States control until a final allocation determination is reached." [66] In substance, then, it asks that the Court treat the executive branch as a type of court-appointed receiver for the purpose of collecting assets of the former SFRY for eventual distribution in accordance with the wishes of the political branches.

The State Department's desire for such a mechanism is not unreasonable. Indeed, similar vehicles have been used in other circumstances. The Trading With the Enemy Act.[67] for example, authorizes the president to appoint an alien property custodian to receive money and property in the United States "due or belonging to an enemy" and to hold and administer it under the president's direction.[68] But the State Department's wish, even if perfectly reasonable, is an insufficient basis for the Court to create such a vehicle without legislation.

Nor is the State Department's position supported by *Kadic v. Karadzic.*[69] The Circuit there allowed a suit under the Alien Tort Act[70] seeking to hold Radovan Karadzic, the president of the self-proclaimed Bosnian–Serb republic of Srpska, liable for genocide, war crimes, and crimes against humanity to proceed. In doing so, however, it relied upon the fact that the first three of the *Baker v.*

*Carr* factors—commitment to a political department, lack of judicial standards, and impossibility of decision absent an exercise of nonjudicial discretion—were absent,[71] which was not surprising because the case essentially was a tort suit, albeit a highly political one. This case is quite different on each of these dimensions. As *Can* indicated, rights of succession to the property of foreign states are "in the first instance constitutionally committed to the executive branch …" [72] The lack of judicial standards and the impossibility of decision absent an exercise of nonjudicial discretion are manifest.

In the last analysis, the Court is persuaded that Jugobanka's claims are not justiciable.

*Slovenijales' Counterclaims*

Slovenijales has interposed counterclaims by which it seeks to recover for the alleged seizure and conversion of Slovenijales' assets in the territory of the FRY(S & M) by the FRY(S & M) government. It alleges that in or about July 1991 the government of the FRY(S & M) seized Slovenijales' assets located in Serbia and Montenegro, including facilities, inventories and cash worth over $13 million. Further, Slovenijales claims that in or about May 1991 the government of the FRY(S & M) caused its alleged instrumentality, JIK Bank, to convert approximately $7.5 million of Slovenijales' deposits. Slovenijales argues that Jugobanka is liable for these actions as an agent or instrumentality of the FRY(S & M).

Jugobanka moves to dismiss these counterclaims on several grounds. It argues that it is not an agent or instrumentality of the FRY(S & M) and, consequently, that it cannot be held liable for the actions of the FRY(S & M) or of JIK Bank. Alternatively, it contends that it is entitled to immunity under the FSIA. In any event, Jugobanka

**65.** *Bennett v. Spear,* 520 U.S. 154, ——, 117 S.Ct. 1154, 1163, 137 L.Ed.2d 281 (1997) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

**66.** Slovenijales SOI, at 23.

**67.** 50 U.S.C.App. §§ 1 *et seq.*

**68.** *Id.* § 6. The Act evidently does not apply here because the property is not that of an "enemy" as defined in the statute. *Id.* § 2.

**69.** 70 F.3d 232 (2d Cir.1995).

**70.** 28 U.S.C. § 1350.

**71.** 70 F.3d at 249.

**72.** 14 F.3d at 163.

argues, the Court lacks jurisdiction to hear Slovenijales' claims.[73] In addition, the United States suggests that Slovenijales' claims may be non-justiciable.[74]

■ The suggestion that the counterclaim may raise a political question is based on several assumptions. First, the United States assumes that Slovenijales' ability to recover from Jugobanka will be limited under the FSIA to the form of a set-off against any recovery Jugobanka may have against it.[75] The second assumption is that Jugobanka's claims are justiciable because of the impact of the Blocking Regulations. Combining these assumptions, the United States concludes that the curative impact of the blocking regulations would be defeated by allowing Slovenijales to offset its own liability via its counterclaim.

The Court has held that Jugobanka's claims are not justiciable despite the effect of the Blocking Regulations. Whether or not Slovenijales' counterclaim could give rise to an offset against Jugobanka's own recovery is therefore immaterial.[76] The State Department having raised no other reason to suppose that a political question is raised by the counterclaims, the Court now sees no basis for dismissing them on justiciability grounds.[77]

■ Jugobanka's contention that it cannot be liable on the counterclaims because it is not an agent or instrumentality of the FRY(S & M) is without merit in the context of a motion to dismiss, which requires the Court to take as true the counterclaimant's factual allegations.[78] Here, Slovenijales alleges that both Jugobanka and JIK Bank are alter egos, instrumentalities, and agents of the government of the FRY(S & M).[79] Jugobanka's denial of this allegation [80] is of no relevance at the motion to dismiss stage. This argument therefore fails.

■ Jugobanka argues next that, taking Slovenijales' allegations to be true, it is entitled to invoke sovereign immunity. Under the FSIA, "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter." [81] Section 1607 provides in relevant part that "[i]n any action brought by a foreign state ... in a court of the United States ... the foreign state shall not be

---

**73.** Jugobanka arguably has raised the additional defense of the act of state doctrine, though this requires a generous reading of the motion to dismiss. *See* Brief in Support of Motion for Summary Judgment at 8. In any event, the act of state doctrine is unavailable when, as in the case of the FRY(S & M), the United States does not recognize the state in question. *See generally First National City Bank v. Banco Nacional de Cuba,* 406 U.S. 759, 765–66, 92 S.Ct. 1808, 32 L.Ed.2d 466 (1972); *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 428, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964).

**74.** Slovenijales SOI, at 25–27.

**75.** 28 U.S.C. § 1607(c).

**76.** Indeed, even if the Court permitted Jugobanka's claims to proceed because of the Blocking Regulations, the set-off issue probably would not arise as it appears that Jugobanka has waived the protections of sovereign immunity by failing to assert this defense in its first responsive pleading. *See Canadian Overseas Ores, Ltd. v. Compania De Acero Del Pacifico S.A.,* 727 F.2d 274, 277 (2d Cir.1984) (quoting H.R.Rep. No. 1487, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.C.C.A.N. 6604, 6616) (sovereign immunity is an "affirmative defense that must be specially plead;" exam-

ples of implicit waivers "include a situation where a foreign state has filed a responsive pleading in an action without raising the defense of sovereign immunity.") This waiver is discussed in more detail below.

**77.** There is no suggestion in the pleadings that the assets of Slovenijales that allegedly were seized were the property of the SFRY. The adjudication of Slovenijales' claim therefore apparently would not involve the Court in the allocation of disputed assets.

**78.** *See, e.g., Newman & Schwartz v. Asplundh Tree Expert Co., Inc.,* 102 F.3d 660, 662 (2d Cir.1996).

**79.** *See, e.g.,* Answer and Counterclaims of Def. UCF and Slovenijales, ¶¶ 28–30.

**80.** Jugobanka denies Slovenijales' characterization, asserting instead that it is a private "commercial bank owned by over 5,000 shareholders ... [and] is not an agent or an alter ego of the FRY (S & M) and has no direct or indirect interest in the entity known as JIK Banka." Motion to Dismiss Counterclaims ¶ 8.

**81.** 28 U.S.C. § 1604.

accorded immunity with respect to any counterclaim ... for which a foreign state would not be entitled to immunity under section 1605 of this chapter had such claim been brought in a separate action against the foreign state...."[82] Section 1605, in turn, provides in relevant part that the immunity provided to a foreign state by Section 1604 shall not apply in any case in which there has been an explicit or implicit waiver of immunity by the foreign state.[83]

■ Sovereign immunity is an "affirmative defense which must be specially pleaded" in order to be maintained, and an implied waiver of sovereign immunity occurs when a foreign state files its first responsive pleading in an action without raising it.[84] Jugobanka's reply, its first pleading responsive to Slovenijales' counterclaims, did not plead the defense of sovereign immunity.[85] The Court therefore concludes that Jugobanka has waived any sovereign immunity defense it may have had.[86]

■ In a related argument, Jugobanka asserts that the Court lacks jurisdiction over the actions of which Slovenijales' complains regardless of whether Jugobanka is entitled to invoke sovereign immunity. The basis for this assertion is that Slovenijales and Jugobanka each are foreign entities, and the actions complained of occurred entirely within the territory of the FRY(S & M). This argument, however, is without merit.

Congress has endowed the federal district courts with original jurisdiction over civil actions against foreign states, so long as the foreign state is not entitled to sovereign immunity.[87] This grant of jurisdiction is not limited, however, to lawsuits brought by citizens of the United States. The Supreme Court in *Verlinden B.V. v. Central Bank of Nigeria*[88] explicitly held that "a foreign plaintiff may sue a foreign sovereign in the courts of the United States, provided the substantive requirements of the [FSIA] are satisfied."[89]

■ In reaching this decision, the Supreme Court found that "Congress was aware of concern that 'our courts [might be] turned into small 'international courts of claims' ... open ... to all comers to litigate any dispute which any private party may have with a foreign state anywhere in the world.'"[90] The Court went on to note, however, that Congress has guarded against this danger "not by restricting the class of potential plaintiffs, but rather by enacting substantive provisions requiring some form of substantial contact with the United States."[91] By this the Court referred to the sovereign immunity provision of the FSIA.[92] Thus, in a suit against a foreign state by a foreign plaintiff, jurisdiction exists if a waiver of sovereign immunity has occurred.[93] In this case, the alleged foreign entity implicitly has

82. *Id.* at § 1607.

83. *Id.* at § 1605(a)(1).

84. *Canadian Overseas Ores, Ltd. v. Compania de Acero del Pacifico*, S.A., 727 F.2d 274, 277 (2d Cir.1984) (*quoting* H.R.Rep. No. 1487, 94th Cong., 2d Sess., 18 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6616–17).

85. Jugobanka did allege lack of subject matter jurisdiction and failure to state a cause of action. Reply (UCF action) ¶¶ 16–17. This was insufficient to preserve the sovereign immunity defense. *Canadian Overseas Ores, Ltd.*, 727 F.2d at 277.

86. It is only for purposes of Jugobanka's motion to dismiss that the Court assumes the truth of Slovenijales' allegation that Jugobanka is an agent or instrument of a foreign state. The Court reaches no conclusions in this opinion concerning Jugobanka's actual status.

87. 28 U.S.C. § 1330(a).

88. 461 U.S. 480 (1983).

89. *Id.* at 489.

90. *Id.* at 490 (quoting testimony of Bruno A. Ristau, Hearings on H.R.11315 before the Subcommittee on Administrative law and Governmental Relations of the house Committee on the Judiciary, 94th Cong., 2d Sess. 31 (1976)).

91. *Id.* (citing 28 U.S.C. § 1605).

92. *Id.*

93. Significantly, *Verlinden* stated also that it is unclear "whether, by waiving its immunity, a foreign state could consent to suit based solely on activities wholly unrelated to the United States." The Court then observed that the FSIA "does not appear to affect the traditional doctrine of *forum non conveniens.*" *Id.* at 491 n. 16; *see also Proyecfin De Venezuela v. Banco Industrial*, 760

waived any sovereign immunity defense to which it otherwise may have been entitled. Jugobanka's motion to dismiss therefore is denied.[94]

### Conclusion

Jugobanka's motion to remand the Slovenijales Actions is denied. Defendants'· motions to dismiss Jugobanka's claims on justiciability grounds are granted in all respects. Jugobanka's motion for a default judgment against Euro is denied and the case against Euro dismissed on the ground that it is not justiciable. Jugobanka's motion to dismiss Slovenijales's counterclaims is denied.

This disposes of all outstanding motions.

SO ORDERED.

F.2d 390 (2d Cir.1985) (*forum non conveniens* available in FSIA context): *Castillo v. Shipping Corp. of India,* 606 F.Supp. 497 (S.D.N.Y.1985) (dismissing on *forum non conveniens* grounds despite finding of waiver of sovereign immunity). As Jugobanka has not raised a *forum non conveniens* argument, the Court does not consider that issue at this time.

94. The Court's dismissal of Jugobanka's claims raises a question concerning the jurisdictional basis for Slovenijales' counterclaims. It is clear that Slovenijales' counterclaims are permissive rather than compulsory, as they arise out of facts that are unrelated to Jugobanka's claims. *See, e.g., Federman v. Empire Fire & Marine Ins. Co.,* 597 F.2d 798, 811–12 (2d Cir.1979) (listing factors to consider in determining whether counterclaim is compulsory or permissive). Unlike compulsory counterclaims, permissive counterclaims require an independent basis of federal court jurisdiction. *Id.* at 812–13.

Slovenijales asserts that Jugobanka is an agent or instrumentality of the FRY (S & M). If true, this would establish federal jurisdiction under the FSIA, as the Court has held that Jugobanka waived the defense of sovereign immunity. Jugobanka denies this assertion, claiming instead that it is a privately-owned corporation. As the parties have neither briefed this argument nor provided competent evidence on this point, the issue is not yet ripe for the Court's decision.