719 A.2d 172 (1998)
315 N.J. Super. 499
Zvonimir SABLIC, Plaintiff-Appellant,
v.
CROATIA LINE, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued September 15, 1998.
Decided October 23, 1998.
*173 Michael J. Carcich, New York City, for plaintiff-appellant (Nicoletti, Hornig & Sweeney, attorneys; Julia M. Moore and Mr. Carcich, of counsel; Julia M. Moore, on the brief).
Robert E. Margulies, Jersey City, for defendant-respondent (Margulies, Wind, Herrington & Knopf, attorneys; Mr. Margulies, of counsel; Frank E. Catalina, on the brief).
Before Judges PRESSLER, BROCHIN and KLEINER
The opinion of the court was delivered by BROCHIN, J.A.D.
Plaintiff Zvonimir Sablic has appealed from a final judgement of the Law Division dismissing his complaint. The judgment was entered on the motion of defendant Croatia Line for summary judgement. The motion court held, in accordance with defendant's contentions, that it lacked personal jurisdiction over defendant because defendant had not been properly served, that it was without in personam jurisdiction to adjudicate plaintiff's claims against defendant because defendant did not have sufficient contacts with the State of New Jersey to satisfy the requirements of due process, and that the Foreign Sovereign Immunity Act, 28 U.S.C.A. § 1602 et seq., immunized defendant from suit on plaintiff's claims in New Jersey courts. Defendant also moved to dismiss plaintiff's claims on the ground of forum non conveniens, but the motion court did not rule on that contention for dismissal because its holdings on the other grounds urged by defendant disposed of the action. For the following reasons, we disagree with the motion court's holding that Croatia Line's contacts with New Jersey were insufficient to subject it to general in personam jurisdiction and that service of process was defective. However, we affirm the motion court's ruling that the Federal Sovereign Immunity Act immunizes Croatia Line from having to respond to Sablic's claims in our courts.
Because this is an appeal from an order for summary judgment, we are required to accept plaintiff's evidence as true and to give him the benefit of all favorable inferences that can reasonably be drawn therefrom. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 666 A.2d 146 (1995). We will summarize the facts of the case in accordance with those principles.
Croatia Line is an entity which operates a steamship line, transporting cargo to and from Port Newark. Its headquarters are located in Croatia and its management is Croatian. It was formed with the name Jugoslovenska Linijska Plovidba ("Jugolinija") under the laws of the former Yugoslavia, and upon the fragmentation of that state, its name was changed to Croatia Line. The entity continued to operate under the laws of Croatia, a successor state.
Plaintiff is a Croatian national. He was granted political asylum in this country as a political refugee. He now resides in New York.
According to plaintiff's complaint, he was employed by Croatia Line and its predecessor and, from time to time, by various affiliated companies for approximately twenty-five years. He alleges that beginning in August 1995, while he was stationed in Hungary, he was threatened and assaulted at the direction of Croatia Line, and that sometime between September 1995 and February 1996, he was wrongfully dismissed from his employment. Plaintiff asserts that the motive for the threats and assaults against him and for his termination was his active political opposition to the ruling Croatian political party. He does not contend that any of the conduct which forms the basis for his claims occurred in New Jersey or anywhere else in the United States.
*174 Croatia Line itself is not authorized to transact intrastate business in New Jersey. It does not own or rent real property in the State. It has no telephone listing here in its own name, and there is no evidence that it has any bank accounts or employees in the state. For almost the past fifty years, however, Croatia Line and its predecessor have maintained regularly scheduled steamship service to and from Universal Terminal, Shed 220, Calcutta Street, Port Newark, New Jersey. The vessels of Croatia Line are berthed, loaded and discharged there, and cargo is received there from shippers and delivered to consignees. In connection with this operation, Croatia Line maintains a fleet of trailer chassis at Port Newark upon which containers for shipping cargo are moved to and from its vessels.
In order to conduct its shipping operations to and from Port Newark, Croatia Line utilizes the services of two affiliated corporations, Croatia Line of North America, Inc. and Crossocean Shipping Co., Inc. Both corporations have their offices at the Meadowlands Complex, Rutherford, New Jersey. Croatia Line of North America, Inc. is a subsidiary of a Liberian corporate subsidiary of Croatia Line. Crossocean Shipping Co., Inc. is a corporate subsidiary of Croatia Line of North America, Inc.
In the tariff filed with the Federal Maritime Commission, Croatia Line listed Crossocean Shipping, Inc. as its "general agents" and as authorized to enter into credit agreements with shippers on its behalf. Crossocean Shipping Co., Inc. is listed as the agent for Croatia Line in the Port of New York and Port of New Jersey's 1996 Port Guide. On behalf of Croatia Line, Crossocean Shipping Co., Inc. issues shipping documents; it bills and collects freight charges; it handles payments for leasing and maintenance of equipment; it solicits and books cargo and arranges to receive it for carriage from the United States, including from New Jersey, to foreign ports; it arranges for unloading and discharging cargo from Croatia Line's vessels; it arranges delivery of cargo from Croatia Line vessels to consignees in New Jersey; and it handles damage claims.
Croatia Line of North America, Inc. operates a regional center for Croatia Line. A general manager of Croatia Line explained in an interview published in the Croatian newspaper, Novi List, that "Regional Centers are located in the main company's markets and they act as the long hand of the shipping line's headquarters for marketing, ships' operations, container equipment operations, documentation control, financial operations and control of the agents in the region."
Defendant has not disputed these facts. It argues, however, that the presence of corporate subsidiaries within New Jersey is insufficient to subject the subsidiary's parent corporation to the subject matter jurisdiction of our courts. We agree, of course, that the mere presence of corporate subsidiaries within a state does not establish the minimum contacts necessary to sustain general in personam jurisdiction. Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 336-37, 45 S.Ct. 250, 251-52, 69 L.Ed. 634 (1925); Unicom Invs. v. Fisco, Inc., 137 N.J.Super. 395, 401, 349 A.2d 117 (Law Div.1975); Restatement (Second) of Conflicts of Laws § 52 comment b (1971) ("Judicial jurisdiction over a subsidiary corporation does not of itself give a state judicial jurisdiction over the parent corporation."). But it is black-letter law that the substantial, continuous activity of agents of a corporation within a jurisdiction establishes the minimum contacts which are required by due process. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); Giangola v. Walt Disney World Co., 753 F.Supp. 148, 154 (D.N.J.1990). This rule applies whether the agent is a corporation or an individual. Substantial continuous activity within the state by one corporation acting as agent for another authorizes the courts of the state to exercise general in personam jurisdiction over the principal. Grand Entertainment Group v. Star Media Sales, Inc., 988 F.2d 476, 483 (3d Cir.1993); Automated Salvage Transport Inc. v. NV Koninklijke KNP BT, No. CIV. A. 96-369, 1997 WL 576402, at *51 (D.N.J. Sept. 12, 1997). Because plaintiff's factual allegations on this issue are undisputed, we hold as a matter of law that our court's exercise of in personam *175 jurisdiction over defendant is consistent with due process.
The Bergen County Sheriff first served plaintiff's summons and complaint on an employee of Crossocean Shipping Co., Inc. at its headquarters in Rutherford, New Jersey. Plaintiff describes the employee who received the summons and complaint as the claims manager of Crossocean Shipping, Inc. Defendant describes her as Crossocean's receptionist. Service was also made pursuant to R. 4:4-3(b)(1) and R. 4:4-4(a)(6) by delivering the summons and complaint to the person who was the president of Crossocean Shipping Co., Inc. and of Croatia Line of North America, Inc. at their Rutherford offices. The Bergen County Sheriff subsequently served Crossocean Shipping, Inc. and Croatia Line of North America, Inc. by delivering the summons and complaint to an individual whom the sheriff's officer identified in his return as the person in charge of their Rutherford offices. Later, a copy of the summons and complaint was also sent to Croatia Line by registered mail, return receipt requested, and simultaneously by ordinary mail, directed to it at its headquarters in Croatia pursuant to R. 4:4-4(b)(1)(C).
Defendant asserts that the service of the summons and complaint on Croatia Line by registered mail was ineffective because plaintiff did not file an affidavit of inquiry satisfying the requirements of R. 4:4-5(c)(2). Plaintiff's supplemental appendix contains an affidavit of an associate of plaintiff's attorneys which was filed to satisfy the requirement for an affidavit of inquiry. The affiant testifies that the Bergen County Sheriff had previously personally served Margaret D'Angelis, a receptionist for Crossocean Shipping Co., Inc. and Croatia Line of North America, Inc., and that Ms. D'Angelis was an agent for both those companies, authorized to accept service on their behalves. The affiant goes on to explain that if, as alleged by defendant, Ms. D'Angelis was not authorized to accept service or if the service on her was otherwise ineffective, personal service was made on the president of Crossocean Shipping Co., Inc. and Croatia Line of North America, Inc., and service by registered and regular mail was made upon defendant at its headquarters in Croatia. This affidavit is sufficient to satisfy the requirements of R. 4:4-5(c)(2). Defendant's contention to the contrary is entirely without merit.
The Federal Sovereign Immunity Act declares, "[A] foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter." 28 U.S.C.A. § 1604. The exceptions deal with circumstances which are not relevant to this case. A "foreign state" is defined by the statute to "include[ ] a political subdivision of a foreign state or an agency or instrumentality of a foreign state...." "[A]gency or instrumentality of a foreign state" means
any entity(1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title nor created under the laws of any third country.
[28 U.S.C.A. § 1603(b).]
By virtue of these provisions, a legal entity "a majority of whose ... ownership interest is owned by" an "agency" or "instrumentality" of a foreign State is itself a "foreign State" as defined by the Act, provided the entity was not created under the laws of any other foreign State and is not a citizen of the United States.
A defendant is immune from suit pursuant to the Act if it was a "foreign state" as thus defined either when the conduct occurred which is the basis for the suit, Gould, Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445 (6th Cir.1988); General Elec. Capital Corp. v. Grossman, 991 F.2d 1376 (8th Cir.1993), or when the complaint was filed. Jones v. Petty-Ray Geophysical, Geosource, Inc., 954 F.2d 1061, 1064-65 (5th Cir.), cert. denied, 506 U.S. 867, 113 S.Ct. 193, 121 L.Ed.2d 136 (1992); Wolf v. Banco Nacional de Mexico, S.A., 739 F.2d 1458, 1460 (9th Cir.1984), cert. denied, 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 778 (1985); Callejo v. *176 Bancomer, S.A., 764 F.2d 1101, 1106 (5th Cir.1985); Belgrade v. Sidex Int'l Furniture Corp., 2 F.Supp.2d 407, 413-14 (S.D.N.Y.1998). Cf. Straub v. A.P. Green, Inc., 38 F.3d 448, 451 (9th Cir.1994) (sovereign immunity protects the defendant if it is a sovereign state at the time of the commencement of suit even if it ceases to be a sovereign state thereafter).
Plaintiff's allegedly wrongful dismissal from his employment by Croatia Line and his harassment allegedly at Croatia Line's direction occurred, according to his complaint, between August 22, 1995 and April 2, 1996. The complaint in this matter was filed February 27, 1997. Consequently, the Foreign Sovereign Immunity Act mandates dismissal of the complaint if Croatia Line was a "foreign state" as defined by the Act at either of those times.
There is no dispute that Croatia Line satisfied two of the three elements of the statutory definition of "agency or instrumentality of a foreign state." At all relevant times, it was "a separate legal person, corporate or otherwise." It was "neither a citizen of a State of the United States ... nor created under the laws of any third country." The contested issue is whether Croatia Line was the "organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof...."
The Federal Sovereign Immunity Act does not define "ownership interest." But the context of "ownership interest" in the statutory phrase, "a majority of whose shares or other ownership interest is owned by a foreign state," indicates that "ownership interest" refers to rights analogous to those conferred by ownership of a "majority of ... shares" in a conventional private corporation.
Defendant Croatia Line became a "socially owned enterprise" in 1952. The form of entity whose designation has been translated as "socially owned enterprise" was a product of Yugoslavia's socialist past. The parties disagree[1] whether the normative legal characteristics of a socially owned enterprise make it an "agency," "instrumentality," or "organ" of a foreign state as defined by the Federal Sovereign Immunity Act. Compare Edlow Int'l Co. v. Nuklearna Elektrarna Krsko, 441 F.Supp. 827, 831 (D.D.C.1977) (a socially owned enterprise is not an "agency," "instrumentality," or "organ" of a foreign state), with Belgrade v. Sidex Int'l Furniture Corp., supra, 2 F.Supp.2d at 414 (holding the contrary). Cf. Matter of Trans Chem. Ltd. & China Nat'l Mach. Import & Export Corp., 978 F.Supp. 266, 283 (S.D.Tex.1997) (corporation was an instrumentality of China); S. & S. Mach. Co. v. Masinexportimport, 706 F.2d 411, 414 (2d Cir.1983) (corporation was an instrumentality of Romania). We conclude, however, that we do not have to decide that controversy. For the following reasons, whether the legal characteristics of a socially owned enterprise as originally constituted make it an "organ," "agency," or "instrumentality" of a foreign state or give the state or any of its agencies or instrumentalities a "majority ... ownership interest" in the enterprise is not material to our decision because Croatia Line was clearly "owned" by an instrumentality of a foreign State during the entity's transition from a socially owned enterprise to a private corporation.
In January 1992, Croatia enacted legislation whose translated title is "The Law on Transition of the Ownership of Socially Owned Companies."[2] This legislation establishes the procedure for the transformation of socially owned enterprises into conventional stock corporations by the issuance of ownership *177 interests in the form of stock to private persons, to the Croatian Privatization Fund, and to other governmental or semi-governmental entities. The purpose of the Croatian Privatization Fund is "to facilitate [the] process and completion of privatization of the property that[,] based on the Law on Transition of Ownership of Socially Owned Companies, [has] been temporarily transferred to the Fund...." The Croatian Privatization Fund is managed by a board of directors appointed by the Croatian Legislature from its members and government ministers. The government appoints the president of the Fund.
A socially owned enterprise is subject to the supervision and control of the Croatian Privatization Fund during the course of its transformation into a private corporation.[3] During the transition, the Fund's assets include the shares or other ownership interest transferred to it in accordance with the Law on Transition. The Fund receives income from dividends based on its share of ownership and from the sale of shares and of other ownership interests in enterprises which are being privatized. Surplus income is to be transferred to the Croatian government.
The United States Supreme Court discussed the characteristics of a government "instrumentality" as follows in First Nat'l Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611, 624, 103 S.Ct. 2591, 2598-99, 77 L.Ed.2d 46, 56 (1983):
Increasingly during this century, governments throughout the world have established separately constituted legal entities to perform a variety of tasks. The organization and control of these entities vary considerably, but many possess a number of common features. A typical government instrumentality, if one can be said to exist, is created by an enabling statute that prescribes the powers and duties of the instrumentality, and specifies that it is to be managed by a board selected by the government in a manner consistent with the enabling law. The instrumentality is typically established as a separate juridical entity, with the powers to hold and sell property and to sue and be sued. Except for appropriations to provide capital or to cover losses, the instrumentality is primarily responsible for its own finances. The instrumentality is run as a distinct economic enterprise; often it is not subject to the same budgetary and personnel requirements with which government agencies must comply.
[citations omitted.]
The Croatian Privatization Fund fits this description and is therefore an "instrumentality" of a foreign state. According to plaintiff, the transition of Croatia Line from a socially owned enterprise to a stock corporation was not completed until at least July 16, 1997. The relationship of the Croatian Privatization Fund to Croatia Line during this transition period was clearly analogous to the relationship of a stockholder to a conventional corporation in which he owns a majority of the corporate stock. Consequently, Croatia Line was a "foreign state" as defined by the Federal Sovereign Immunity Act from approximately January 16, 1992 to July 16, 1997. The dates both of the filing of plaintiff's complaint and of the conduct which he alleges as the basis for his claims fall within this period. Croatia Line is therefore entitled to immunity against plaintiff's suit.
This conclusion makes it unnecessary for us to decide whether, as Croatia Line has argued, it is also entitled to the dismissal of plaintiff's complaint under the doctrine of forum non conveniens. See Gore v. United States Steel Corp., 15 N.J. 301, 305-14, 104 A.2d 670 (1954).
The judgment appealed from is therefore affirmed.
NOTES
[1] We assume arguendo that we may properly consider plaintiff's statement of the legal characteristics of a socially owned enterprise although he is not a lawyer.
[2] Plaintiff has provided translations of relevant legislation. Despite the translator's certification that he is "fluent in both English and Croatian," the language of the translations is not coherent English and portions of the statute are omitted. Nonetheless, defendant has accepted the accuracy and relevance of plaintiff's translations, perhaps in order to avoid factual disputes about the controlling statutes. We conclude that we can glean sufficient meaning from the translations that have been given to us, considered in the light of the parties' affidavits, for the disposition of this case.
[3] According to plaintiff, when Croatia Line's transformation is complete, 36.91 percent of its stock will have been transferred to the Croatian Privatization Fund and 18.46 percent, in total, to the Retirement and Invalid Workers' Fund of the Republic of Croatia and the Retirement and Invalid Individual Farmers' Fund of the Republic of Croatia.