**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1586-17T4

PCIREO-1, LLC,

      Plaintiff-Appellant,

v.

RONALD J. MARKER; STATE
OF NEW JERSEY; BURDETTE
TOMLIN MEMORIAL HOSPITAL
n/k/a CAPE REGIONAL MEDICAL
CENTER; C&R OF NORTHFIELD,
ASSIGNEE; NEW JERSEY CASUALTY
INSURANCE CO.; ABC BAIL BONDS, INC.;
RONALD MARKER, HEIR TO RONALD
MARKER; MRS. MARKER, SPOUSE
OF PETER MARKER a/k/a PETE MARKER;
MARIANNE T. INMAN; CONNIE L. STOH;
CAPE MAY COUNTY CWA; BARRY N.
LOZUKE, and WEAVER OIL COMPANY,

      Defendants,

and

PETER MARKER a/k/a PETE
MARKER,[1]

---

[1] Misidentified in the complaint as Peter Marker, and identified in the record as Peter Zanetich.

Defendant-Respondent.

_____

Argued October 24, 2018 – Decided November 2, 2018

Before Judges Reisner and Mawla.

On appeal from Superior Court of New Jersey, Chancery Division, Cape May County, Docket No. F-018120-14.

Amber J. Monroe argued the cause for appellant (Gary C. Zeitz, LLC, attorneys; Amber J. Monroe, on the briefs).

Michelle Altenpohl argued the cause for respondent (South Jersey Legal Services, Inc., attorneys; Elizabeth Cunningham and Michelle Altenpohl, on the brief).

PER CURIAM

In this tax lien foreclosure matter, plaintiff PCIREO-1, LLC, appeals from an April 28, 2017 order, vacating the final judgment of foreclosure entered against defendant. Plaintiff also appeals from a May 26, 2017 order, which vacated a dismissal of defendant from the foreclosure proceedings and permitted him to file an answer and conduct discovery. Additionally, plaintiff appeals from a November 14, 2017 order dismissing its complaint. We affirm.

The following facts are taken from the record. In 2011, a tax sale certificate for defendant's residence in North Wildwood was purchased by US

Bank Cust for Pro Capital I, LLC. The lien originated from unpaid taxes of $495.01 and sewer charges of $397.36 in 2011. These sums plus interest and the lien premium totaled $1100. In November 2016, the lien was assigned to plaintiff and recorded with the clerk.

The last recorded deed on defendant's property was dated December 12, 1995. The deed identified Ronald J. Marker as the grantee, and Ronald J. Marker and his wife, Joan Ann Marker, as grantors. Defendant is the son of Joan and the step-son of Ronald.[2] He has been residing in the property since 1990, after his parents moved to another North Wildwood property. Joan predeceased Ronald, and Ronald passed away on September 8, 2010.

Defendant paid nearly all of the taxes and sewer charges for the property since his parents moved out. He provided records from the City of Wildwood to corroborate the payments he made between 2010 and 2016. However, a lien attached for the unpaid tax and sewer charge in 2011.

After plaintiff acquired the lien and before it filed the tax lien foreclosure complaint, it conducted an estate search through the Cape May County Surrogate office and obitsarchive.com. No record of an estate was found. Plaintiff filed

---

[2] We utilize first names for Joan and Ronald Marker for ease of reference and to distinguish them from defendant. No disrespect is intended.

A-1586-17T4

the complaint on May 6, 2014, naming Joan, Ronald, Jane Doe, and John Doe as defendants. On May 18, 2014, a process server served a copy of the summons and complaint upon John Doe at the property. An individual identifying himself as Pete Marker, later identified as defendant, accepted service on behalf of John Doe. Defendant also accepted service on behalf of Ronald, identifying himself as his brother.

On May 3, 2016, a second amended complaint was filed joining additional parties, namely, defendant, who was incorrectly named as Pete Marker; Ronald J. Marker Jr.; and Ronald J. Marker Jr.'s heirs. On May 5, 2017, the North Wildwood post office confirmed Peter Marker received mail at the property. Therefore, the following day, plaintiff attempted service on defendant via regular first-class mail and certified mail at the property. Plaintiff then unsuccessfully attempted service of the summons and complaint by process server on May 7, 9, and 17, 2016, at the property. Plaintiff also published a "Notice to Absent Defendants" in The Press of Atlantic City on May 7, 2016.

On June 28, 2016, default judgment was entered against defendant. A subsequent order dated August 22, 2016 was entered, setting December 12, 2016 as the last date of redemption. Defendant was served with the August order, as

well as a motion to substitute plaintiff, via regular first-class mail and certified mail on November 9, 2016, at the property.

On January 9, 2017, final judgment of the foreclosure action was entered. Defendant was served with the judgment on January 10, 2017, via first-class mail. A writ of possession was entered against Ronald, his heirs, and personal representatives on February 14, 2017. On March 3, 2017, Christine Zanetich who is Ronald's niece, and Peter Zanetich filed an emergent application to stay the eviction. The application was denied because the judge determined the writ of possession did not apply to Christine.

On March 9, 2017, plaintiff filed an ejectment complaint. Defendant filed an order to show cause in opposition. At the hearing for the order to show cause, defendant provided a certification, which represented he was Ronald's step-son, and stated his name was not Pete Marker, but Peter Zanetich. Defendant alleged he was never served with the summons and foreclosure complaint. He certified he was able to redeem the tax lien.

On April 28, 2017, the motion judge heard argument on defendant's motion to vacate the final judgment and granted it. The judge found plaintiff did not prove due diligence in attempting personal service on defendant before attempting service by mail. On the same date, plaintiff voluntarily dismissed

defendant from the foreclosure, which prevented defendant from filing an answer to the complaint.

On May 3, 2017, plaintiff filed a second application for final judgment. In response, defendant filed a motion to intervene, which was granted on May 26, 2017. Defendant filed an answer to the complaint on June 1, 2017. As a result, plaintiff's application for final judgment was denied.

Therefore, plaintiff filed a motion for summary judgment on September 19, 2017, which defendant opposed. The tax lien was redeemed on October 19, 2017. On November 14, 2017, a different motion judge filed an order plaintiff submitted withdrawing its motion for summary judgment, deeming all issues as to all parties in the foreclosure proceedings disposed of, and dismissing the foreclosure complaint. This appeal followed.

I.

Generally, a court's determination under Rule 4:50-1 warrants substantial deference and should not be reversed unless it results in a clear abuse of discretion. Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994). An abuse of discretion occurs when a decision is "made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis." U.S. Nat'l Bank Ass'n v. Guillaume, 209 N.J. 449, 467-

6

68 (2012) (quoting <u>Iliadis v. Wal-Mart</u>, 191 N.J. 88, 123 (2007) (internal quotations omitted)). <u>Rule</u> 4:50-1 provides various avenues for relief from a judgment or order and, in relevant part, reads:

> On motion, with briefs, and upon such terms as are just, the court may relieve a party . . . from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; . . . (c) fraud[,] . . . misrepresentation, or other misconduct . . . ; (d) the judgment or order is void; . . . or (f) any other reason justifying relief from the operation of the judgment or order.

"The rule is designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have the authority to avoid an unjust result in any given case." <u>Guillaume</u>, 209 N.J. at 467 (citation and internal quotation marks omitted).

## II.

On appeal, plaintiff argues the final judgment was erroneously vacated because defendant was Ronald's step-son, had no legal interest in the property, and plaintiff was not required to serve him. In the alternative, plaintiff asserts defendant was properly served. Plaintiff also claims defendant did not have the funds to redeem the lien. It argues there was no excusable neglect established pursuant to <u>Rule</u> 4:50-1(a), the judgment was not void to warrant relief pursuant to <u>Rule</u> 4:50-1(d), nor were there extraordinary circumstances for relief from the

judgment under Rule 4:50-1(f).  Plaintiff argues if the decision to vacate the judgment stands, it should receive counsel fees for its efforts to obtain the judgment.  We address these arguments in turn.

A.

At the outset, we reject plaintiff's argument defendant was not entitled to notice and should not have been served with the foreclosure pleadings because he was not Ronald's heir pursuant to N.J.S.A. 3B:1-1.  Although N.J.S.A. 3B:1-1 excludes step-children from intestate succession, and N.J.S.A. 3B:5-4(f) states a step-child may only inherit an intestate share where there are no surviving descendants of the decedent's grandparents, the facts here do not concern an intestate inheritance.  Plaintiff concedes, defendant "was vested with a right to redeem the [t]ax [l]ien as an occupant of the [p]roperty."  See N.J.S.A. 54:5-54.  Therefore, proper service on defendant was required.

B.

"The requirement that a court have personal jurisdiction over a defendant is designed to protect the defendant's individual liberty interest flowing from the Due Process clause."  Rosa v. Araujo, 260 N.J. Super. 458, 462–63 (App. Div. 1992) (citing Ins. Corp. v.  Compagnie des Bauxites, 456 U.S. 694, 702 (1982).  "[W]here a default judgment is taken in the face of defective personal service,

the judgment is [generally] void." Id. at 462 (citing Garza v. Paone, 44 N.J. Super. 553 (App. Div. 1957)). "A default judgment will be considered void when a substantial deviation from service of process rules has occurred, casting reasonable doubt on proper notice." Jameson v. Great Atl. & Pac. Tea Co., 363 N.J. Super. 419, 425 (App. Div. 2003) (citing Sobel v. Long Island Entm't Prod., Inc., 329 N.J. Super. 285, 293-94 (App. Div. 2000)). "If defective service renders the judgment void, a meritorious defense is not required to vacate the judgment under [Rule] 4:50-1(d)." Ibid.

"It is elementary that service must be accomplished in accordance with the pertinent rules in such a way as to afford notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Ibid. (citations omitted).

"The primary method of obtaining in personam jurisdiction over a defendant in this State is by causing the summons and complaint to be personally served within this state pursuant to [Rule] 4:4-3[.]" R. 4:4-4(a). The person serving process shall make a return by filing an affidavit establishing proof of service. R. 4:4-7. Return of service creates a "presumption that the facts recited therein are true." Garley v. Waddington, 177 N.J. Super. 173, 180 (App. Div.

1981).  Although this presumption may be rebutted, it may only be by clear and convincing evidence the return is false.  Id. at 180-81.  A defendant's uncorroborated testimony alone cannot overcome the presumption raised by a return of service.  Goldfarb v. Roeger, 54 N.J. Super. 85, 90 (App. Div. 1959).

"If personal service cannot be effectuated 'after a reasonable and good faith attempt,' other methods are available."  City of Passaic v. Shennett, 390 N.J. Super. 475, 483 (App. Div. 2007) (quoting R. 4:4-3).  Indeed, "in personam jurisdiction may [also] be obtained by mail under the circumstances and in the manner provided by [Rule] 4:4-3."  R. 4:4-4(a)(8).  "A party's good faith effort to personally serve a defendant must be 'described with specificity in the proof of service.'"  Shennet, 390 N.J. Super. at 483 (quoting Rule 4:4-3;  -7).

Ordinarily, an affidavit of diligent inquiry that evinces an earnest effort to serve a defendant personally satisfies these requirements.  Sablic v. Croatia Line, 315 N.J. Super. 499, 505-06 (App. Div. 1998).  However, a court may reject an affidavit where it reveals a plaintiff failed to undertake basic efforts to effect personal service, or where an injustice "might result if adequate scrutiny of the affidavit of inquiry is not undertaken."  See M & D Assocs. v. Mandara, 366 N.J. Super. 341, 353-54 (App. Div. 2004) (rejecting service by publication where an affidavit of diligent inquiry showed the plaintiff did not search motor

10

vehicle or voter registration records, which would have shown defendant resided in-state).

Rule 4:4-3(a) provides, in pertinent part:

> If personal service cannot be effected after a reasonable and good faith attempt, . . . service may be made by mailing a copy of the summons and complaint by registered or certified mail, return receipt requested, to the usual place of abode of the defendant. . . . The party making service may, at the party's option, make service simultaneously by registered or certified mail and ordinary mail, and if the addressee refuses to claim or accept delivery of registered mail and if the ordinary mailing is not returned, the simultaneous mailing shall constitute effective service. . . . Return of service shall be made as provided by [Rule] 4:4-7.

Rule 4:4-7 states:

> If service is made by mail, the party making service shall make proof thereof by affidavit which shall also include the facts of the failure to effect personal service and the facts of the affiant's diligent inquiry to determine defendant's place of abode, business or employment. With the proof shall be filed the affidavit or affidavits of inquiry, if any, required by [Rule] 4:4-4 and [Rule] 4:4-5.

We addressed the aforementioned rules in U.S. Bank Nat. Ass'n v. Curcio, 444 N.J. Super. 94 (App. Div. 2016), where a plaintiff attempted service in a foreclosure. There, plaintiff's counsel sent a notice of intent to foreclose to a defaulting defendant at the address of the encumbered property via regular mail

11

and certified mail, which the defendant acknowledged by certified mail return receipt. Id. at 102. Approximately eight months later, plaintiff instituted a foreclosure action. Ibid. Over the course of a month, the plaintiff unsuccessfully attempted to serve the defendant through a process server at least three times at the property. Ibid. Plaintiff's counsel then hired a private investigator to perform a skip trace, which revealed the defendant was still residing at the property. Ibid. The private investigator report also detailed the efforts to locate defendant through his creditors, multiple databases, and neighbors. Id. at 103. Plaintiff's counsel then mailed the defendant the complaint and summons via regular and certified mail. Ibid. The regular mail was not returned, but the certified mail was returned marked "unclaimed." Ibid. The plaintiff's efforts at attempted service were detailed in a certification, which explained:

> the process server's affidavit of unsuccessful personal service; the postmaster's finding of no change of address; the results of the inquiries to the DMV and Tax Assessor's Office showing defendant still lived at the encumbered property; the private investigator's report; and the USPS "Track & Confirm" printout showing that the certified mail was "[u]nclaimed."
>
> [Ibid. (alteration in original).]

We concluded the process server's three attempts to serve the defendant met the standard of Rule 4:4-3 requiring a reasonable and good faith attempt to effectuate service. Curcio, 444 N.J. Super. at 106. Furthermore, we found the "plaintiff made a 'diligent inquiry to determine defendant's place of abode' before making mail service," which met the requirements of Rule 4:4-7. Ibid. (quoting Rule 4:4-7). We concluded plaintiff had provided sufficient proof of a diligent inquiry. Id. at 106-07.

Here, plaintiff attempted to serve the second amended complaint via a process server on May 6, 9, and 17, 2016. However, plaintiff also simultaneously attempted service by regular mail and certified mail on May 6, 2016, and attempted service by publication before the second and third attempts at in-person service were made. The motion judge concluded the sequence of events did not constitute a good faith attempt at in-person service. He explained:

> [I]t's ultimate service, not simultaneous service. For example, if you're serving motion papers after a person's been attached, been brought in and you've established jurisdiction over them, you do it by regular and certified mail. In case they don't accept the certified, you still have the regular.
>
> That's not what is provided for in the rules. It is sequential: You first try personal service and you try it diligently. Then you move onto certified mail. Otherwise, to do it any other way would encourage

mischief, where you just kind of make these cursory attempts at service.

But I don't even have proof of service in this case, [there] was . . . [in]adequate proof that a service was attempted. I have an affidavit or what purports to be an affidavit, the signatory of it, [is] clearly . . . it looks like a "J" to me or an "F." It's either an "F" or a "J," but there's no way that that's a "W." . . .

[I]t doesn't even look like the right person. And in addition, the problem that I have is that they went and somebody changed this document and added in this extra date after it was signed. They only went out twice and tried it. They didn't try three times, they tried twice. And I find that's not adequate service in this case.

We agree. Plaintiff's attempts at effectuating service here were the opposite of <u>Curcio</u>. Indeed, in <u>Curcio</u>, plaintiff's counsel attempted personal service three times and then hired a private investigator to locate the defendant before finally resorting to service via mail. This methodology complied with the "sequential" hierarchy for achieving valid service pursuant to <u>Rule</u> 4:4-3, which prioritizes personal service as a means of assuring proper notice to a defendant. Plaintiff's attempts at service here did not provide such assurances.

Furthermore, the motion judge did not abuse his discretion questioning the credibility of the process server's affidavit. The judge stated:

First off, I have an [a]ffidavit of [s]ervice that looks like it's signed by the person who didn't perform the service,

14

> and now [plaintiff's] counsel says well maybe more than one person performed service. Well, then you need two affidavits.
>
> In addition, the affidavit stated [May 16th and was] notarized on [May 16th.] However, somebody scribbled in "5-17-16" to make that the third attempt.

The judge also stated he did not "have proof that there was an adequate attempt [at service because] there's no description of what they tried to do."

It was within the motion judge's discretion to scrutinize and reject the affidavit. M & D, 366 N.J. Super. at 354. The record supports his conclusions regarding the questionable nature of plaintiff's efforts to effectuate service. Plaintiff has provided us no basis to second-guess the determination.[3]

## C.

Finally, we reject plaintiff's argument that defendant should not have been permitted to redeem the tax lien because he did not have the funds to immediately satisfy it. Plaintiff presumes it had a valid judgment to enable it to assert such an argument. As we have noted, plaintiff did not achieve proper service, which therefore negates the validity of its judgment.

---

[3] Because we have affirmed the motion judge's determination that service of process was invalid, the April 28, 2017 order vacating plaintiff's judgment was also valid. For these reasons, we do not reach plaintiff's arguments challenging the April order pursuant to Rule 4:50-1(a), (d) and (f), or the argument it was entitled to fees and costs on account of the alleged validity of the judgment.

Furthermore, the record reveals the genesis of this dispute was one unpaid tax and sewer bill from 2011, totaling $895. As we noted, with the exception of these bills the taxes and sewer for the property have been paid. Also, as noted in the November 14, 2017 order, the lien was ultimately redeemed by defendant.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1586-17T4